**NATIONAL EMPLOYEE BENEFIT TRUST OF the ASSOCIATED GENERAL CONTRACTORS OF AMERICA and Manning Billeaud as Trustee**

v.

**Edith C. SULLIVAN and Freddie D. Sullivan.**

**Civil Action No. 95–0670.**

United States District Court, W.D. Louisiana, Alexandria Division.

July 3, 1996.

Marshall T. Napper, Shotwell Brown & Sperry, Monroe, LA, for Associated General Trust, Manning Billeaud.

Daniel E. Broussard, Jr., Broussard Bolton Halcomb & Vizzier, Alexandria, LA, for Edith C. Sullivan, Freddie D. Sullivan.

LITTLE, District Judge.

### RULING

For the reasons that follow, the motion for summary judgment of plaintiffs National Employee Benefit Trust of the Associated General Contractors of America and Manning Billeaud as Trustee is GRANTED. Defendants Freddie and Edith Sullivan requested that their opposition to NEBT's motion be treated as a cross-motion for summary judgment. In light of the above, the Sullivans' motion is DENIED.

### I

For many years, defendant Edith Sullivan has received medical benefits from the National Employee Benefit Trust of the Associated General Contractors of America (NEBT). NEBT is a fully insured employee welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1102(a)(1). Among terms in the summary plan description is the following:

> In the event any benefit payments are made under this Plan for injury or illness and the Plan participant for which payment is made is or may be entitled to recover against any other person or entity responsible for the injury or illness, this Plan will have the right to recover its payment either directly from the person or entity responsible for the accident or illness, or from the proceeds of any recovery obtained by the Plan participant from the responsible person or entity.

SPD at 17. The SPD further explains that as a precondition to benefit payment, a participant may be required to assign or otherwise cooperate with the Plan in prosecuting actions against parties responsible for accidents or illness. The Trust document explains that the trustee shall have "full and complete authority and control with respect to the operations and administration of the Plan" and "the exercise of these powers shall be binding on all persons." Trust document at 27. These include the power "[t]o construe and interpret the Agreement [the Plan] and any group insurance policy," to amend the benefit package, and to determine benefit eligibility. Trust document at 27–30. Billeaud's affidavit states that the Trustees have consistently interpreted the Plan's right of recovery provisions to require participants to reimburse the Plan for medical expenses paid regardless of whether the Participant has been made whole in its efforts to recover damages from an injury-causing tortfeasor.

In 1991, Sullivan was injured in an automobile accident. Consistent with the plan, NEBT requested Sullivan sign an Assignment, Repayment and Subrogation Agreement in order to receive benefits after the accident. She did so. Under the agreement, which was witnessed by her then and current attorney, Sullivan agreed "to pay to the Plan, to the extent of any recovery in excess of [her] out-of-pocket medical expenses from any third party, any amounts previously paid to [her] by the Plan." Sullivan incurred over $138,000 of medical expenses related to the accident, and NEBT paid $135,300.

On 8 May 1992, Sullivan and her husband brought suit against various liability insurers in state court. On 6 November 1992, one of those state court defendants invoked a concursus and deposited its insurance proceeds into the court's registry. NEBT was served in that action, and it asserted its right to recover the medical expenses it paid on Sullivan's behalf. The Sullivans ultimately received some benefits from their own uninsured/underinsured motorist carrier. The liability insurers of the other drivers in the accident tendered to the Sullivans and NEBT jointly the sum of $123,793.95 in full payment of their obligations stemming from the accident. The Sullivans and NEBT then attempted unsuccessfully to settle their own differences.

NEBT filed this action for declaratory judgment of its rights to the settlement proceeds on 13 April 1995. On 24 April 1995, the Sullivans filed a Supplemental and Amending Petition in state court to determine their rights to the same funds. NEBT followed in state court with a declinatory exception objecting to the prosecution of the state action because of the prior claim filed in this court.

NEBT filed a motion for summary judgment on the declaratory judgment action on 16 February 1996. The same day, the Sullivans filed a motion to dismiss and, in the alternative, for a stay of plaintiff's declaratory judgment action on the grounds that the state court had jurisdiction and was the appropriate forum to resolve the dispute. The Sullivans also requested that we treat their opposition to NEBT's motion for summary judgment as a cross-motion for summary judgment. On 11 April 1996, this court denied the motions to dismiss and for a stay and also addressed, though did not decide, some of the issues in plaintiff's motion for summary judgment. After briefing, this court held oral argument on the latter motion. We now GRANT that motion.

## II

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party, *id.* at 255, 106 S.Ct. at 2513, but the nonmovant must come forward with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where an ERISA benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, as this one does, we review administrators' actions under an arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

The plan before the court is an ERISA benefit plan. ERISA preempts state law interpreting provisions of an ERISA benefit plan, and thus we look to federal law to resolve this dispute. *FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *Cutting v. Jerome Foods,* 993 F.2d 1293, 1296 (7th Cir.1993). ERISA does not, however, regulate the substantive content of welfare benefit plans,

*Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985), and thus we consult other federal law to interpret them. Federal common law applies in the absence of statutory provisions, and our understanding of it may be informed by state law principles. *Cutting,* 993 F.2d at 1296–97.

■ A review of the plan documents, summary plan description and the subrogation agreement, leads us to find that NEBT is entitled to recover from the Sullivans' settlement the amount it paid Edith Sullivan in benefits. The Plan's provisions, provided to Mrs. Sullivan in the summary plan description and agreed to again in the Assignment, Repayment and Subrogation Agreement, state that NEBT has a right of recovery. Though the Sullivans argue that the plan does not explicitly state that NEBT's rights are greater than the Sullivans' to be "made whole," the plan trustees' conclusion that NEBT has the right to recover fully from the Sullivans is reasonable.[1] *See Cutting,* 993 F.2d at 1299.

■ The Sullivans urge this court to adopt the "make whole" doctrine as a federal common law principle to assist in interpreting subrogation clauses in ERISA plans. Even if we did so, we are unconvinced the doctrine would alter our holding. The make whole doctrine is an insurance principle that absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries or "made whole." *Barnes v. Independent Automobile Dealers Ass'n of California Health & Welfare Benefit Plan,* 64 F.3d 1389, 1394 (9th

Cir.1995); *see Fields v. Farmers Ins. Co.,* 18 F.3d 831, 835 (10th Cir.1994) (noting jurisdictions following the rule). The doctrine is merely a rule of interpretation, a "gap-filler" that comes into play when contracts fail to address the issue clearly. *Barnes,* 64 F.3d at 1394; *Cutting,* 993 F.2d at 1297. Of course, a beneficiary may sign away the right to be made whole. *Id.* The make-whole doctrine may be useful in the absence of a clear contractual provision to the contrary, *Barnes,* 64 F.3d at 1395, or where the plan administrator lacks discretion to construe the plan, *cf. Shell v. Amalgamated Cotton Garment,* 871 F.Supp. 1173, 1177–78 (D.Minn.1994), but those scenarios do not present themselves here.[2] The contractual language contemplates that NEBT should recover fully, and the administrator has construed the plan accordingly consistent with his power to do so.

### III

Thus, for the reasons given above, plaintiff NEBT's motion for summary judgment is GRANTED, and the Sullivans' cross-motion is DENIED. NEBT has the right to recover from the Sullivans' settlement with third-party tortfeasors the amount it paid in benefits related to Edith Sullivan's 23 May 1991 automobile accident, minus one-third of the amount recovered pursuant to the attorney fee agreement.

1. It is our understanding that the state court settlement also resolved plaintiff Freddie Sullivan's claims. At our 29 May 1996 oral hearing on this motion, we asked counsel to instruct the court as to what portion of the settlement proceeds is attributable to Mr. Sullivan's claims. Though we cannot be certain that information would have changed our decision, counsel has not provided it, and the time is long past to supplement the record in this matter.

2. The Sullivans also cite *Evans v. Midland Enterprises, Inc.,* 754 F.Supp. 91 (M.D.La.1990), which applied the make whole theory to an ERISA plan's reimbursement provision, because Louisiana law applies the rules of partial subro-

gation, essentially the make whole doctrine, to reimbursement agreements. We cannot easily apply *Evans'* reasoning to this matter, however, because the opinion apparently assumed state law applied without discussion of the doctrinal basis for that assumption. Nor does the opinion quote the precise plan and reimbursement agreement provisions that might shed light on the choice of law issue or the question of whether the administrator has power to construe the plan's provisions. In any event, the ruling of one federal district court does not control the holding of another, and we are persuaded that the reasoning of the Seventh Circuit is more appropriately applied to this case.