726 So.2d 1048 (1999)
In the Matter of the TUTORSHIP OF Jeremy Todd ROY.
No. 31,383-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
*1049 Richard L. Fewell, Jr., for Appellant, Tutrix of Jeremy Roy.
Napper, Waltman, Madden & Rogers by Thoms W. Rogers, Ruston, for Appellee, Ball Glass Container.
DeCelle & Holland by Malcolm DeCelle, Jr., Monroe, for Appellee, Larry Roy.
Before BROWN, STEWART and GASKINS, JJ.
BROWN, J.
On September 30, 1994, in a one-vehicle accident, Jeremy Todd Roy was severely injured while a guest passenger in an automobile operated by Ronnie Jones who carried minimum liability coverage. At the time, Jeremy's parents, Larry D. Roy and Debra Kay Roy were divorced and shared joint custody with the mother designated as the primary domiciliary parent. As a result of the accident, Jeremy incurred medical expenses in excess of $66,683.98. All of these expenses were paid by Ball Glass Container Corporation pursuant to health and hospitalization benefits it provided to Jeremy as the son of its employee, Larry Roy.[1]
After being confirmed as natural tutrix for her then minor son, Debra Roy filed suit on Jeremy's behalf to recover for his injuries. She also petitioned the court for approval to settle any of Jeremy's claims. Pursuant to that authority, she settled with her own uninsured motorist provider for the policy limits of $10,000. Additionally, she settled with State Farm, the father's UM carrier, for its UM limits of $100,000 and the $5,000 limit under its medical pay provisions.
In a concursive proceeding instituted by the tutrix against Ball Glass, the court ordered that the proceeds from the father's insurance, $105,000, be deposited in the registry of the court.[2] Additionally, the court directed that attorney fees of $35,000 be withdrawn and paid to the attorney for the tutorship, along with any costs due. Ball Glass filed an answer maintaining that it was entitled to reimbursement from the funds deposited with the court for the medical expenses it had paid on Jeremy's behalf. It was stipulated that the funds from the settlement would not fully compensate Jeremy for his general or special damages. The trial court ruled that the disputed funds would first be applied to any unpaid medical expenses and then to Ball Glass to the full extent of the medical bills it had paid. The tutrix on Jeremy's behalf has appealed.
The sole issue is to what extent, under the reimbursement provision of its ERISA employee benefits plan, Ball Glass, may recover from the settlement proceeds for medical expenses it paid on Jeremy's behalf. For the following reasons, the judgment of the trial court is reversed and the case remanded with instructions.[3]

*1050 Discussion

The parties do not dispute that the Ball Glass employee benefits plan is a self-funded ERISA plan.
Addressing the issue presented, we first must recognize that state subrogation law does not govern its resolution. ERISA preempts state regulatory laws as well as state statutory and common-law rules related to self-funded employee benefit plans. FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). It is well settled that this includes the preemption of state subrogation and reimbursement laws. Id.; Sunbeam-Oster Co. Group Ben. Plan v. Whitehurst, 102 F.3d 1368 (5th Cir.1996); Barnes v. Independent Auto. Dealers Ass'n, 64 F.3d 1389 (9th Cir.1995); National Employee Benefit Trust v. Sullivan, 940 F.Supp. 956 (W.D.La.1996). Such preemption is meant to ensure that ERISA benefit plans are governed by a single set of regulations and to maintain the Congressional intent of making pension plan regulation an exclusively federal concern. FMC Corp., supra. Consequently, we are bound by federal law in determining the appropriate manner for distributing the disputed insurance funds and will not look to state law.[4]
The U.S. Supreme Court has instructed federal courts to develop a federal common law of rights and obligations under ERISA-regulated benefits plans. Ryan by Capria-Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir.1996), citing, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In applying that dictate to the resolution of disputes regarding participants rights under ERISA benefit plans, the federal courts have followed traditional principles of trust and contract law. Sunbeam-Oster Co. Group Ben. Plan, supra; Ryan by Capria-Ryan, supra. Indeed, ERISA sets forth no principles of interpretation of its own nor does it regulate the substantive content of welfare benefit plans. Cutting v. Jerome Foods, Inc., 993 F.2d 1293 (7th Cir.1993), cert. denied, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); National Employee Benefit Trust, supra. Therefore, a court should look to the terms of the plan and other manifestations of the parties intent regarding reimbursement and subrogation rights. Sunbeam-Oster Co. Group Ben. Plan, supra.
The written instrument governing an ERISA-regulated plan is in the nature of a private contract between the parties to the plan. Health Cost Controls v. Rogers, 909 F.Supp. 537 (N.D.Ill.1994). Thus, the plain and straightforward language of the plan should be given its literal and natural meaning. Ryan by Capria-Ryan, supra; Health Cost Controls v. Rogers, supra. Likewise, when the words of the plan are clear and explicit and lead to no absurd consequences, courts need not use other theories of interpretation, i.e. general federal common law, to alter the express terms of a written benefit plan or search for the parties' intent. Health Cost Controls v. Isbell, 139 F.3d 1070 (6th Cir.1997); Sunbeam-Oster Co. Group Ben. Plan, supra; Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.1990).
Applying these federal law principles to the present case, we find that the trial court's distribution of the insurance proceeds does not conform to the intent of the parties. As noted above, the benefits paid by Ball Glass were provided as part of a self-insured ERISA employee benefit plan. As a condition of those medical expenses being paid for Jeremy, his father signed a "Reimbursement Agreement" stating that he would "[i]n accordance with plan provisions, ... agree to reimburse [Ball Glass] to the extent of any *1051 recovery less attorney fees and legal expenses of said expenses as a result of any legal action or settlement or otherwise." (Emphasis added).
The language of an enrollment sheet signed by Larry Roy and the "Subrogation and Repayment" section of the Ball Glass ERISA-regulated benefits plan clearly indicate that reimbursement is due only where the participant or beneficiary receives payment twice for the same medical expenses. In setting forth the subrogation and reimbursement rights, the written provisions state in several places that reimbursement is due only "to the extent" of recovery of "any covered benefits." Moreover, § 10.5 of the Ball-Icon Packaging Corp Employee Benefits Plan specifically refers to a subrogation right for "special damages" and additionally, provides that the participant or beneficiary is required to reimburse the plan only from "that amount which has been paid or reimbursed twice." This language is clear and unambiguous and plainly intended to prevent double recovery by the participant or beneficiary. Therefore, we find that it gives Jeremy priority over Ball Glass to the proceeds from any settlement or suit related to his accident which are not specifically designated as payment for medical expenses already paid by Ball Glass. See Sanders v. Scheideler, 816 F.Supp. 1338 (W.D.Wis.1993), affirmed, 25 F.3d 1053 (7th Cir.1994); U.S. Healthcare, Inc. v. O'Brien, 868 F.Supp. 607 (S.D.N.Y.1994) (interpreting similar language in ERISA plans as giving the participant priority of payment from settlement or suit proceeds for damages by third parties). Cf. Chitkin v. Lincoln Nat. Ins. Co., 879 F.Supp. 841 (S.D.Cal.1995) (finding specific language needed to provide the plan with priority in recovery from such proceeds).
Having found that the trial court erred in determining the manner in which the concursus funds should have been distributed, we now reverse. Additionally, while the parties agreed that the funds placed in the registry of the court do not fully compensate Jeremy for his injuries, we are unable to tell from the record whether any of the settlement funds, other than the $5,000 under Larry's medical pay insurance with State Farm, were specifically designated as compensation for medical expenses. Nor is there any similar information regarding the settlement relative to Debra's insurance. Therefore, we remand this case for a hearing to determine how much, if any, of the insurance proceeds were explicitly designated by the parties to the settlement as compensation for Jeremy's medical expenses.[5] Furthermore, upon making that determination, the trial court is ordered to issue a judgment distributing any money deposited in the registry of the court in the following order:
(1) Payment to Jeremy Todd Roy or his successors for any unpaid medical expenses arising out of the accident from those amounts of the insurance settlement the trial court determines have been specifically designated for medical expenses.
(2) Payment to Ball Glass only of any amounts remaining from the portion of the insurance settlement proceeds the trial court determines has been specifically designated for medical expenses less Ball Glass's written obligation to pay a proportionate share of attorney fees and legal expenses.[6]
(3) Payment to Jeremy Todd Roy or his successors of any remaining funds.[7]

*1052 Conclusion

The judgment of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Ball Glass.
REVERSED AND REMANDED.
NOTES
[1] Ball Glass's employee benefit plan is self-funded and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.
[2] The record indicates that the order instituting the concursus proceeding provided only that the settlement proceeds from the Larry's UM coverage be placed in the court registry. The order did not provide instructions regarding the settlement proceeds from the mother's UM carrier.
[3] Our review of the record shows that Jeremy, born on November 11, 1978, became an adult after trial but prior to the signing of the judgment by the district court. Yet, he was never substituted as the plaintiff in this matter. Instead, his mother, Debra, continued as the record plaintiff in her capacity as tutrix as is permissible under La. C.C.P. art. 805. However, according to a peremptory exception filed by Ball Glass, Jeremy died during the pendency of this appeal. In such case, any judgment rendered by this court would be null unless the proper parties were substituted in accord with the Code of Civil Procedure. Nonetheless, in a separate order issued November 24, 1998, we denied the peremptory exception on finding that the issues in this appeal survived Jeremy's death but directed Debra, as Jeremy's tutrix, to file a motion substituting the proper party plaintiffs-appellants in this matter. A motion was filed and an order signed on December 9, 1998, by the district court, substituting Deborah Roy (Hamilton) and Larry Roy as the proper parties to proceed with this appeal.
[4] This concursus proceeding was instituted by the tutrix on behalf of Jeremy, a beneficiary of the ERISA plan in which his father participated. Under 29 U.S.C. § 1132(a)(1)(B) and 1302, state courts of competent jurisdiction and federal district courts have concurrent jurisdiction to hear cases involving civil actions brought by a participant or beneficiary of an ERISA benefits plan to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." Therefore, jurisdiction is not an issue. Cf. A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp., 94-2011 (La.06/30/95), 657 So.2d 1292.
[5] It is clear from the record that the $5,000 paid under the medical pay provision of Larry's State Farm policy was explicitly meant to be for medical expenses. All other funds appear from the incomplete record to have no such designation and thus, without further evidence, would be first distributed for Jeremy's benefit.
[6] The document signed by Larry agreeing to reimburse Ball Glass pursuant to the terms of the ERISA plan for any medical benefits paid on Jeremy's behalf as a result of the accident explicitly indicated that Ball Glass would pay its share of attorney fees.
[7] As the amounts at issue in the current concursus proceeding were stipulated as being less than that needed to fully compensate Jeremy for his injuries, Ball Glass is not entitled to any further reimbursement. However, should later settlements or suit proceeds be of an amount which can fairly be said to make full compensation for all of Jeremy's injuries then Ball Glass may be entitled to further reimbursement. Nonetheless, any such reimbursement claim should be in accord with the dictates of this opinion giving Ball Glass only subordinate priority on any amounts recovered on Jeremy's behalf.