743 So.2d 731 (1999)
Jacqueline ROBERTS, Plaintiff Appellee,
v.
Gregory J. RICHARD & Progressive Security Insurance Company & State Farm Mutual Automobile Insurance Company, DefendantsAppellants.
No. 99-259.
Court of Appeal of Louisiana, Third Circuit.
July 28, 1999.
Writ Denied November 19, 1999.
*732 Mark Anthony Delphin, Lake Charles, Eulis Simien, Jr., Baton Rouge, for Jacqueline Roberts.
Charles V. Musso, Jr., Lake Charles, for State Farm Mutual Automobile Ins. Co.,
Robert E. Landry, Lake Charles, for Westlake Polymer Corp.
BEFORE: YELVERTON, SAUNDERS, and DECUIR, Judges.
YELVERTON, J.
Mrs. Jacqueline Roberts was injured in an automobile accident on May 6, 1996. Westlake Polymers Corporation was the employer and self-insured health insurer of Mrs. Roberts' husband. Westlake Polymers paid medical expenses on Mrs. Roberts' behalf totaling $10,543.28. Westlake Polymers' plan provided subrogation rights in Westlake Polymers' favor if the covered person (Mrs. Roberts in the instant case) recovered from a third party. Mrs. Roberts filed a damage suit against the third-party tortfeasor, Gregory Richard. She settled the tort claim for a total of $37,000 ($10,000 in damages paid by the tortfeasor's insurer, $25,000 paid by the UM insurer, and $2,000 in med-pay from her own insurer). She provoked a concursus over the ownership of the $10,543.28 of the settlement proceeds equaling the medical expenses which Westlake Polymers had paid on her behalf. The trial court ruled in favor of Mrs. Roberts.
Westlake Polymers appeals arguing that it is entitled to reimbursement from Mrs. Roberts, based on its health care plan provided to its employees and their dependents which contains the following provision:
7.07 Subrogation Rights

Any payments made by this Plan for Sickness or Injury caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the Covered Person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in the satisfaction of any judgment. The amount which must be reimbursed to the Plan will be the lesser of the payments actually made by the Plan, or the amount received by the Covered Person from the third party. As security for the Plan's rights to reimbursement, the Plan will be subrogated to all of the Covered Person's rights of recovery against a third party (or the party's insurers) to the extent of any payments made by the Plan. The Claims Administrator will withhold payments of claims made under this Plan, to the extent that the Claims Administrator has actual knowledge of a negligent or wrongful act of a third party, until the Covered Person or the Covered Person's legal representative executes a subrogation reimbursement agreement.
The above subrogation rights also apply to medical payments made by the Covered Person's own auto insurance.
Mrs. Roberts argues that she is entitled to keep the money in accordance with the trial court's decision. The trial court's decision was based on Evans v. Midland Enterprises, 754 F.Supp. 91 (M.D.La. 1990), wherein the federal district court, utilizing the Make Whole Doctrine, held that an injured employee did not have to reimburse his employer's health plan unless it was found that the employee was fully compensated for his injuries. It is undisputed that the settlement did not fully compensate Mrs. Roberts for her injuries.
*733 The issue presented for our review is whether Mrs. Roberts is entitled to retain the $10,543.28 Westlake Polymers paid on her behalf.
Westlake Polymers administers a self-funded health and dental care plan for the exclusive benefit of eligible employees and their dependents. The plan is an ERISA benefit plan. "The federal Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq. (ERISA), inclusively regulates employee pension and welfare plans." A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp., 94-2011 (La.6/30/95); 657 So.2d 1292, 1300. Mrs. Roberts is a beneficiary under the plan. 29 U.S.C. § 1002(8).
We apply federal law to this ERISA dispute. According to Nat. Employee Benefit Trust v. Sullivan, 940 F.Supp. 956 (W.D.La.1996), ERISA preempts state law interpreting provisions of an ERISA benefit plan. Likewise, the Supreme Court has made it clear that "ERISA preempts state regulatory laws as well as state statutory and common-law rules related to self-funded employer benefit plans." In Re Roy, 31,383 (La.App. 2 Cir. 1/20/99); 726 So.2d 1048, 1050 (citing FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). State subrogation and reimbursement laws are also preempted by ERISA. Sunbeam-Oster Co. Group Ben. Plan v. Whitehurst, 102 F.3d 1368 (5 Cir.1996). Therefore, federal law governs the dispute.
Westlake, as administrator, was vested with the discretionary authority to interpret the plan. Section 8.01 of the plan provides:
Section 8.01 Plan Administrator
Westlake Polymers Corporation shall have all authority and responsibility for the administration and interpretation of the Plan, and, for purposes of ERISA, shall be the "administrator" of the Plan and its "named fiduciary" with respect to matters for which it is responsible, provided that the Board shall have the sole authority to amend or terminate the Plan. To the maximum extent permitted by ERISA, every action and determination of the Board shall be final and binding upon each Participant, beneficiary, other Employee and every other person entitled to or claiming participation in the Plan or benefits from the Plan. No member of the Board shall be entitled to act on or decide any matter relating solely to himself or any of his rights or benefits under the Plan.
The law is clear that where an ERISA plan grants its administrator discretion to interpret plan provisions, the court may set aside the administrator's interpretation only if there has been an abuse of discretion. Spacek v. Maritime Ass'n, 134 F.3d 283 (5 Cir.1998); Walker v. Wal-Mart Stores, 159 F.3d 938 (5 Cir.1998).
The Make Whole Doctrine is an insurance principle which mandates that, in the absence of a contrary agreement, an insurance company may not enforce its subrogation rights until the insured has been fully compensated for her injuries "made whole." Nat. Employee Benefit Trust, 940 F.Supp. 956. It is considered a rule of interpretation or gap filler which becomes significant only when contracts fail to clearly address the issue. Id.
In Sunbeam-Oster Co. Group Ben. Plan, 102 F.3d 1368, employee Leonard Whitehurst was injured in an automobile accident. Sunbeam-Oster's self-funded employee welfare benefits plan paid medical expenses on behalf of Whitehurst in the amount of $137,000. Whitehurst and his family subsequently sued the driver of the rig, its owner, and the owner's insurer which caused his injury. The Plan did not intervene or participate in settlement negotiations. The Whitehursts settled for $509,000.
Sunbeam's summarized plan document contained a subrogation clause which provided:

*734 The Plan has subrogation and reimbursement provisions which allow the Plan to recover for benefits it pays which are duplicated from another source. The Plan provides an automatic lien on any funds subject to reimbursement or subrogation.
Reimbursement gives the Plan the right to collect from you money that you receive in a settlement or lawsuit that covers expenses that the Plan has already paid for....
Id. at 1371.
The Plan instituted suit against Whitehurst for reimbursement of the medical expenses it paid on Whitehurst's behalf. The trial court denied the Plan's claim utilizing the Make Whole Doctrine of construction and holding that the Plan could not recover through reimbursement or subrogation until the beneficiary was made whole through compensatory damages. Finding that Whitehurst suffered $2,000,000 in damages but only recovered $500,000, the trial court rejected the Plan's claim for reimbursement.
The Fifth Circuit reversed in light of the language in the Plan's subrogation provision and concluded that the Plan was indeed entitled to full reimbursement by the beneficiary of the amounts the Plan paid on his behalf. Further, the court noted that the Plan's failure to specifically address partial recovery situations was not fatal to the Plan's right to full reimbursement "the absence of more particularized and technical legal language addressing the partial recovery situation cannot be grounds for supplanting the Plan Priority rule when recovery is partial...." Id. at 1376. Finding the language of the Plan's reimbursement and subrogation provisions clear and unambiguous, the court did not address the issue of the appropriate default rule for reimbursement or subrogation in the absence of clear language in the Plan documents.
The Fifth Circuit, in dicta, also emphasized its "most serious concern"the district court's "res nova selection of the Make Whole rule as the appropriate default rule of construction...." Id. at 1377. Although not reaching the appropriate default rule in the Sunbeam-Oster case, the court expressed "serious doubts" as to whether it would "ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary under circumstances such as the ones we consider today." Id. at 1378. Further, the court emphasized its reversal in toto of the district court's judgment including the trial court's application of the Make Whole Doctrine to reimbursement and subrogation provisions in an ERISA plan.
The Louisiana Second Circuit recently confronted a reimbursement provision In Re Roy, 726 So.2d 1048. The court recognized that ERISA provides no principles of interpretation nor does it regulate the substantive content of welfare plans; rather, the federal courts have been directed to create "a federal common law of rights and obligations under ERISA-regulated benefits plans." Therefore, the federal courts look to the "traditional principles of trust and contract law" when resolving disputes pertaining to participants' rights under ERISA benefit plans. Id.
In construing the reimbursement provision before it, the Roy court set forth some guidelines for interpreting these provisions:
The written instrument governing an ERISA-regulated plan is in the nature of a private contract between the parties to the plan. Thus, the plain and straightforward language of the plan should be given its literal and natural meaning. Likewise, when the words of the plan are clear and explicit and lead to no absurd consequences, courts need not use other theories of interpretation, i.e. general federal common law, to alter the express terms of a written benefit plan or search for the parties' intent.
Id. (citations omitted)
Utilizing these principles, the court then found that the language in the plan clearly *735 indicated that payment was due only where the participant or beneficiary recovered twice for the same medical expenses. Finding that the beneficiary was granted priority over the proceeds received in settlements or suits, the court found in favor of the beneficiary.
Therefore, it is clear from the decisions rendered in both Sunbeam and Roy that the proper method to interpret an ERISA benefit plan's subrogation provision is to construe it according to the language in the agreement and the expression of the parties' intent. Only in the absence of clear language and intent should we look beyond the terms of the agreement and toward the gap fillers, such as the Make Whole Doctrine, regarding the reimbursement and subrogation rights between the plan and the plan participant or beneficiary. We therefore do not apply the earlier Evans decision upon which Mrs. Roberts relies in support of her argument that the trial court correctly applied the Make Whole Doctrine to the subrogation provision at hand.
We likewise do not reach the appropriate default rule as we find that Westlake Polymers' plan provision clearly and unambiguously vests in Westlake Polymers the right to reimbursement for monies it has expended on behalf of its insured. We repeat the following language from Westlake Polymers' plan:
Any payments made by this Plan for Sickness or Injury caused by the negligent or wrongful act of any third party are made with the agreement and understanding that the Covered Person will reimburse the Plan for any amounts which are later recovered from the third party by way of settlement or in the satisfaction of any judgment.
The concluding subrogation language is, "The above subrogation rights also apply to medical payments made by the Covered Person's own auto insurance." This language emphasizes the intent that there be full recovery on behalf of the Plan for any amounts received by the injured party. Therefore, following the dictates of Sunbeam-Oster and Roy, we do not reach the issue of whether the Make Whole Doctrine would apply where the plan's terms are ambiguous. In accordance with the traditional principles of contract law, we interpret Westlake Polymers' plan as granting it a right of full reimbursement for monies expended on Mrs. Roberts' behalf. The trial court erred in applying Louisiana's Make Whole Doctrine in light of the unambiguous language in Westlake Polymers' policy.
We likewise will not penalize Westlake Polymers for failing to address, in its plan provisions, the possibility of its insured only partially recovering from a third party tortfeasor or his insurer. The Fifth Circuit stated in Sunbeam-Oster Co. Group Ben. Plan, 102 F.3d at 1375:
[T]he fact that the SPD [Summary Plan Description] for the Plan does not express a reimbursement priority for each possible combination or permutation here, the beneficiary's partial recovery from the tortfeasor's insureris not a valid reason for branding the SPD as silent and subjecting it first to a search for the intent of the parties and then to a default rule of interpretation if their intent cannot be discerned.
Westlake Polymers, through its subrogation provision, clearly intended to provide its plan a right to full recovery or reimbursement of medical benefits paid on behalf of a participant or beneficiary regardless of whether the injured party receives full compensation for her injuries.
Therefore, we find that the language in Westlake Polymers' contract plainly means that Westlake Polymers is entitled to full reimbursement of medical expenses paid on Mrs. Roberts' behalf from the monies she has received through settlement or judgment. We must interpret ERISA plans "in an ordinary and popular sense as would a person of average intelligence and experience." Jones v. Georgia Pacific Corp., 90 F.3d 114, 116 (5 Cir.1996). In *736 doing so, we find that Westlake Polymers' plan provides full reimbursement rights in favor of Westlake Polymers for amounts expended on behalf of those beneficiaries and participants injured by third-party tortfeasors. The Administrator did not abuse its discretion by interpreting the plan in favor of reimbursement.
For the above reasons, we reverse the judgment of the trial court and grant judgment in favor of the Administrator of Westlake Polymers, declaring that it is the owner of the amount of $10,543.28 in the Registry of Court. Plaintiff-appellee will pay costs.
REVERSED AND RENDERED.