964 So.2d 998 (2007)
Michael SIMS
v.
BFI WASTE SERVICES, L.L.C.
No. 2006 CA 1319.
Court of Appeal of Louisiana, First Circuit.
May 16, 2007.
*1000 Peter T. Dudley, Baton Rouge, Counsel for Plaintiff/Appellant Michael Sims.
Trenton J. Oubre, Matthew Bonham, Baton Rouge, Counsel for Defendant/Appellee BFI Waste Services, L.L.C.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
A workers' compensation claimant appeals a judgment denying his motion seeking indemnity under a compromise agreement and statutory penalties. For the following reasons, we reverse the judgment in part and affirm it in part.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS
The claimant-appellant, Michael Sims, was a driver employed by the defendant, BFI Waste Services, L.L.C. (BFI). He filed a disputed claim for compensation with the Louisiana Office of Workers' Compensation Administration on September 11, 2003, alleging he sustained a work-related injury on June 12, 2003.
Throughout the course of the subsequent proceedings, the causal relationship of Mr. Sims's medical condition to any work-related accident was vigorously contested. BFI denied liability for any benefits or medical expenses, basing its position primarily on the fact that Mr. Sims had earlier made a claim for disability benefits with UNUM Provident Insurance Company (UNUM), attesting that his medical condition was degenerative in nature and his resulting disability was unrelated to a workplace injury. The claim with UNUM was approved, and Mr. Sims began receiving disability benefits on July 9, 2003, prior to the filing of the disputed claim for compensation. Medical expenses related to treatment of his condition had been paid through a group health care plan with CIGNA Healthcare, also purportedly based upon Mr. Sims's representations that his condition was not due to a workplace injury. Mr. Sims also applied for and was awarded Social Security disability benefits, which commenced on December 1, 2003.
The trial of the claim was eventually set for January 5, 2005, but the parties agreed to settle the dispute as the result of a mediation held on January 7, 2005. The compromise was later embodied in a written agreement entitled "Receipt and Release," executed by Mr. Sims on February 17, 2005. In addition to providing for the release of all claims by Mr. Sims in exchange for the payment of $25,000.00, the compromise agreement also provided for reciprocal indemnity obligations owed by both parties. BFI's indemnity obligation, the central issue of this appeal, was expressed as follows:
As a further condition and in further consideration of the settlement reached herein, BFI agrees to indemnify and hold harmless Michael Sims, from any specific claims asserted by CIGNA Healthcare and/or UNUM Provident Insurance Company solely for reimbursement *1001 of paid medical expenses and/or disability insurance benefits received by Michael Sims up to the date this matter was settled in principle at the mediation of this matter on January 7, 2005. (Emphasis supplied.)
On February 22, 2005, a UNUM representative wrote to Mr. Sims, advising him that as he had received Social Security disability benefits during a period in which he also received full long-term disability benefits from UNUM, he had been overpaid $7,138.01, and UNUM was entitled to reimbursement in that amount. On March 9, 2005, Mr. Sims's attorney sent a letter by facsimile telecopier and mail to BFI's attorney, enclosing a copy of UNUM's letter and advising BFI that Mr. Sims would seek defense and indemnity of UNUM's claim from BFI.
On March 16, 2005, the parties submitted a joint petition seeking approval of their compromise agreement by the workers' compensation judge (WCJ). No issue was raised in the petition concerning UNUM's reimbursement claim. Finding that a bona fide dispute existed and that compromise was fair and equitable, the WCJ rendered judgment on March 17, 2005, approving the compromise according to the terms of the "Receipt and Release," and dismissing the claim with prejudice.
On January 20, 2006, Mr. Sims filed a Motion to Enforce Settlement Agreement and to Assess Penalties, based upon BFI's refusal to indemnify him for UNUM's claim for reimbursement. The motion was heard on February 17, 2006, and the WCJ ruled in favor of BFI, denying the motion and dismissing Mr. Sims's claim for indemnity and penalties asserted therein. The WCJ's judgment was signed on February 23, 2006. Mr. Sims then instituted this appeal.

ASSIGNMENTS OF ERROR
We summarize Mr. Sims's two assignments of error as follows:
(1) The WCJ committed legal error in ruling that BFI's indemnity obligation in the compromise agreement did not apply to UNUM's reimbursement claim for overpayment of disability benefits based upon Mr. Sims's concurrent receipt of Social Security disability benefits.
(2) The WCJ erred in failing to award Mr. Sims statutory penalties and attorney fees under La. R.S. 23:1201(G).

ANALYSIS
The general rules which govern the interpretation of other contracts apply in construing contracts of compromise and indemnity. See Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748, and Dean v. Griffin Crane & Steel, Inc., 05-1226, p. 7 (La.App. 1st Cir.5/5/06), 935 So.2d 186, 191, writ denied, 06-1334 (La.9/22/06), 937 So.2d. 387. Thus, the following general codal principles guide our interpretation of the contract, including its indemnity provisions.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. This is an objective inquiry; thus, "a party's declaration of will becomes an integral part of his will." La. C.C. art.2045, Revision Comments  1984, (b). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art.2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art.2048. Each provision in a contract must be interpreted in light of the other provisions so that each is *1002 given the meaning suggested by the contract as a whole. La. C.C. art.2050.
In Moak v. American Auto. Ins. Co., 242 La. 160, 134 So.2d 911 (La.1961), the Louisiana supreme court held that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. This rule is a special exception to the general rule of La. C.C. art.2046, based upon a supplementary rule of construction in La. C.C. art. 3073 stating that compromises "do not extend to differences which the parties never intended to include in them." Brown, 93-1019, 630 So.2d at 748-49. Under Moak and its progeny, the parties to a release or compromise are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal. Brown, 93-1019, 630 So.2d at 749. Thus, in the case of a compromise agreement, the intent which its words express in light of the surrounding circumstances at the time of execution of the agreement is controlling. Brown, 93-1019, 630 So.2d at 748. However, the jurisprudential rule of Moak has since been tempered by the qualification that there must be some substantiating evidence of mistaken intent as to the nature of the rights being released or the aspects of the claim being released. Brown, 93-1019, 630 So.2d at 749.
As the mover or plaintiff-in-rule, Mr. Sims had the initial burden of establishing his entitlement to reimbursement, and he established that prima facie case based upon the terms of the compromise agreement alone. See Drapcho v. Drapcho, 05-0003, p. 10 (La.App. 1st Cir.2/10/06), 928 So.2d 559, 565, writ denied, 06-0580 (La.5/5/06), 927 So.2d 324. But as the party asserting the benefit of the release as excluding the claim for reimbursement, BFI bore the burden of proof on the validity and scope of the release. Id.
Other provisions in the compromise agreement refer to potential claims by UNUM. In addition to the provision describing BFI's indemnity obligation to Mr. Sims, the "Receipt and Release" provided that Mr. Sims owed certain contingent indemnity obligations to BFI:

Except for the specific claims of CIGNA Healthcare and UNUM Provident Insurance Company as previously outlined herein, Michael Sims does hereby agree to indemnify, hold harmless and defend (solely at his cost including court costs and attorneys' fees) BFI . . . from and against any and all claims or demands . . . which may be hereafter asserted by any firm or person . . ., corporation and/or entity against BFI . . . in connection with any alleged injuries or claims arising out of Michael Sims's injuries . . . which allegedly occurred on or about June 12, 2003, or at any time during his employment with BFI . . .
Michael Sims acknowledges that it is his obligation to pay, from the lump sum set forth above, any outstanding and/or future medical bills. Michael Sims further agrees to satisfy, in full, any and all liens and/or privileges and/or subrogation demands asserted by any third party and Michael Sims hereby assumes all obligations and/or responsibilities for the payment of same, except the specific potential claims of CIGNA and UNUM as outlined above. (Emphasis supplied.)
It might be argued that the language of the second paragraph quoted above serves to further define or narrow BFI's indemnity obligation to only those potential claims for which UNUM could assert a lien or privilege, or for which it could assert a demand based upon subrogation. To the extent that this conceivably injects some ambiguity into the scope of the indemnity *1003 obligation, such ambiguity is easily resolved by examination of the terms of UNUM's policy, which was introduced as extrinsic evidence by both parties at the hearing. The terms of that policy are obviously relevant to an understanding of the scope of BFI's indemnity obligation relating to any potential claim by UNUM.
The policy issued by UNUM provided both short-term and long-term disability benefits under an employer-funded disability plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. ERISA preempts state statutes related to self-funded employee benefit plans, including state subrogation and reimbursement laws. In re Tutorship of Roy, 31,383, p. 2 (La.App. 2nd Cir.1/20/99), 726 So.2d 1048, 1050. ERISA sets forth no principles of interpretation of its own nor does it regulate the substantive content of employee benefit plans. Therefore, a court should look to the terms of the plan and other manifestations of the parties' intent regarding reimbursement and subrogation rights. Tutorship of Roy, 31,383 at p. 3, 726 So.2d at 1050.
The relevant language of UNUM's policy simply provides that "UNUM has the right to recover any overpayments due to . . . [an employee's] receipt of deductible sources of income," that the employee "must reimburse [UNUM] in full," and that UNUM "will determine the method by which repayment is to be made." (Emphasis supplied.) "Deductible sources of income" that UNUM was entitled to offset against its long-term disability payments included, among others, workers' compensation benefits and Social Security disability payments. There is no provision providing for conventional subrogation of UNUM to the employee's rights against the employer or any third-party obligor, and as Louisiana substantive law does not apply, no legal subrogation under the Civil Code would exist.
At the hearing, BFI argued that its indemnity agreement was negotiated in the course of the mediation, based upon a concern by Mr. Sims's counsel that UNUM would seek reimbursement for disability payments made without reduction for workers' compensation received, and that Mr. Sims's receipt of Social Security disability benefits, another "deductible source of income," was never discussed during the negotiations. BFI renews that argument in this appeal.
BFI's argument that the Social Security disability payments received by Mr. Sims were not at issue in the compromise is belied by the following language contained in the "Receipt and Release":

Michael Sims represents that he is currently receiving Social Security Disability Income. Michael Sims further represents that he has received Social Security Disability Income for a period less than 24 months and that he does not have a reasonable expectation of becoming a Medicare beneficiary within 30 months of this settlement and that the total amount of this compromise settlement, including indemnity, medicals and attorneys' fees is less than $250,000. (Emphasis supplied.)
The foregoing language expressly evidences BFI's knowledge of the receipt of Social Security disability payments, and implicitly acknowledges BFI's awareness that its potential indemnity obligation formed part of the "amount" of the settlement. We also observe that the UNUM policy, including its reimbursement clause, forms part of the documentary evidence offered by BFI at the hearing, and BFI unquestionably was familiar with its terms, as it funded the disability plan as employer. While BFI's argument is reasonable and makes sense given the nature of the claim compromised, no direct evidence or *1004 testimony regarding that supposed intent was offered at the hearing on Mr. Sims's motion. Argument of counsel, no matter how artful, is not evidence. Houston v. Chargois, 98-1979, p. 3 (La.App. 4th Cir.2/24/99), 732 So.2d 71, 73. There is simply no direct evidence supporting BFI's alternate interpretation of the phrase "any specific claims asserted by . . . UNUM . . . solely for reimbursement of paid . . . disability insurance benefits received by Michael Sims."
Louisiana Civil Code article 2057 sets forth a rule which provides further guidance in the present fact situation:
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.

Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. (Emphasis supplied.)
If BFI had actually intended to limit its indemnity obligation to claims for reimbursement of overpayments based upon Mr. Sims's receipt of workers' compensation benefits only, it easily could have supplied that necessary explanation in the compromise agreement. It did not. Nor did it seek to amend the compromise agreement to clarify that point or to bring the issue before the WCJ before seeking his approval according to its written terms. Given that BFI had notice of the claim for reimbursement prior to obtaining such approval, we view the latter omission as particularly significant. Accordingly, the indemnity agreement must be interpreted as written, against BFI, an interpretation that otherwise accords with the plain meaning of the provision and is still consistent with the factual context of the compromise.
In opposition to Mr. Sims's motion, BFI also argued that his claim for indemnity under the compromise agreement was premature, citing Suire v. Lafayette City-Parish Consol. Gov't, 04-1459 (La.4/12/05), 907 So.2d 37. In Suire, the Louisiana supreme court observed that an indemnitor is not liable under an indemnity agreement until the indemnitee actually makes payment or sustains loss, and that a claim for defense under an indemnity agreement is premature until the party entitled to indemnity has sustained some compensable loss. Suire, 04-1459 at p. 17, 907 So.2d at 51.
At the hearing, Mr. Sims introduced a letter from UNUM to his client dated November 30, 2005, advising him that it would be applying his full monthly long-term disability payments to the overpayment amount until the full amount claimed was recovered. Thus, at the time the motion was heard on February 17, 2006, Mr. Sims established a prima facie case that his benefits since November 30, 2005 were being withheld and set off by UNUM against the overpayment. There being no evidence to the contrary, his claim for indemnity could no longer be considered premature on the grounds that no loss had been sustained.
Additionally, we note that BFI did not assert the dilatory exception of prematurity in response to Mr. Sims's claim, although it did raise the issue by memorandum. Even if such could somehow be considered the equivalent of an exception, the dilatory exception must be tried and decided in advance of the trial on the merits of a claim. See La. C.C.P. art. 929. If not tried in advance of the trial on the merits, any objection asserted in a dilatory exception is waived or abandoned. See Dombrowski v. New Orleans Saints, 05-0762, p. 5 (La.App. 1st Cir.8/2/06), 943 So.2d 403, 407, and La. Power & Light Co. *1005 v. City of Houma, 229 So.2d 202, 204 (La.App. 1st Cir.), writ denied, 254 La. 1165, 229 So.2d 350 (La.1969). Thus, BFI's argument as to prematurity lacks merit on both substantive and procedural grounds.
In summary, we agree with Mr. Sims that the WCJ erred in denying his claim for indemnity against BFI. Accordingly, he is entitled to indemnification from BFI for UNUM's claim for reimbursement of the overpayment of disability benefits through January 7, 2005, in the amount of $7,138.01. But as Mr. Sims failed to offer any evidence at the hearing regarding any costs or expenses incurred in the defense of UNUM's claim for reimbursement, he is not entitled to judgment for any such costs of defense.

Statutory Penalties and Attorney Fees
A consent judgment of compromise may constitute a "final, non-appealable judgment" for purposes of imposition of statutory penalties and attorney fees under La. R.S. 23:1201(G). Trahan v. Coca Cola Bottling Co. United, Inc., 04-0100, pp. 16-19 (La.3/2/05), 894 So.2d 1096, 1107-09. Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan 04-0100 at p. 17, 894 So.2d at 1108. As a penal statute, La. R.S. 23:1201(G) must be strictly construed. Cooper v. St. Tammany Parish Sch. Bd., 02-2433, pp. 9-10 (La. App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, 04-0434 (La.4/23/04), 870 So.2d 300.
Louisiana Revised Statutes 23:1201 provides that penalties and attorney fees shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer had no control. Brown v. Texas-LA Cartage, Inc., 98-1063, p. 8 (La.12/1/98), 721 So.2d 885, 890. In order to reasonably controvert a claim, the defendant must have some valid reason or evidence for refusing to pay, or must have based his decision on a nonfrivolous legal dispute. See Brown, 98-1063 at p. 9, 721 So.2d at 890.
Although embodied by reference in a consent judgment, the terms of the "Receipt and Release" are not expressed with the clarity and precision generally required of a judgment. Given the nature of the compromised claim, the factual context of the compromise, and the contingent nature of the indemnity provision at the time the agreement was signed, BFI's interpretation of the scope of its indemnity obligation was certainly plausible, and its interpretation constituted a valid basis to reasonably controvert the claim for indemnity. Imposition of penalties under these facts would not further the statutory scheme, and is not warranted under these facts. Thus, the WCJ was correct in denying Mr. Sims's claim for penalties, and we affirm that portion of the WCJ's judgment.

DECREE
The judgment of the Office of Workers' Compensation Administration, District 5, is reversed in part to hold the defendant-appellee, BFI Waste Services, L.L.C., liable for indemnity to the claimant-appellant, Michael Sims, for the sum of $7,138.01, together with legal interest thereon from the initial date of loss until paid, and is otherwise affirmed. All costs of this appeal are assessed to the defendant-appellee.
REVERSED IN PART AND AFFIRMED IN PART.
KUHN, J., concurs.