# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-30414

BENEFIT RECOVERY, INC.,

Plaintiff-Appellant,

v.

JAMES J. DONELON,
In His Official Capacity as Commissioner
of Insurance for the State of Louisiana,

Defendant-Appellee.

Appeal from the United States District Court
for Middle District of Louisiana

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Benefit Recovery, Inc. ("Benefit"), sued the Louisiana Commissioner of Insurance in his official capacity;[1] the district court granted summary judgment for the Commissioner, holding that the Employee Retirement Income Security

---

[1] James J. Donelon replaced J. Robert Wooley as Commissioner in 2006 and was substituted as the proper party defendant.

Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., does not preempt Directive 175, which the Commissioner had issued.  We affirm.

I.

In early 2003, the Commissioner issued Directive 175, which provides that "any right of recovery from third parties on the part of the insurer, whether by subrogation or reimbursement, is subordinate to the insured's right to be fully compensated for his damages; and . . . the insurer is obligated to share in the legal expenses incurred."  According to stipulated facts, Directive 175 applies only to insurance policies, not self-funded ERISA benefit plans or entities acting as "pure administrators" of such plans.

Directive 175 therefore encapsulates the so-called "make whole" and Moody doctrines.  The "make whole" doctrine is "an insurance principle which mandates that, in the absence of contrary agreement, an insurance company may not enforce its subrogation rights until the insured has been fully compensated for her injuriesSS'made whole.'"  Roberts v. Richard, 743 So. 2d 731, 733 (La. App. 3d Cir.), writ denied, 749 So. 2d 677 (La. 1999).  The Moody doctrine is that a benefits provider may be "charged with a proportionate share of the reasonable and necessary costs of recovery, including attorneys' fees, incurred by the injured worker in the suit against the third person." Moody v. Arabie, 498 So. 2d 1081, 1083 (La. 1986).

Benefit provides subrogation services to Louisiana self-funded and fully insured employer health benefit plans, many of which are governed by ERISA. A proposed health insurance form from Ochsner Health Plan, with whom Benefit had contracted for subrogation services, was rejected for failing to include terms pursuant to Directive 175.

Benefit sued the Commissioner in August 2003 on the theory that ERISA preempts Directive 175.  The parties proposed the case be decided on cross-mo-

tions for summary judgment and filed joint stipulations of fact. The district court granted the Commissioner's summary judgment motion on the theory that Directive 175 is saved from preemption by 29 U.S.C. 1144(b)(2)(A) ("Section 514").

Benefit moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), asking the court to decide whether Directive 175 is invalid on state-law grounds and requesting an opportunity to submit additional evidence on the savings clause analysis. The district court refused.

## II.

Benefit first contends that ERISA's complete preemption provision, 29 U.S.C. § 1132(a) ("Section 502") , preempts Directive 175. Benefit, however, has not preserved that issue for appeal.

We will not consider arguments or evidence that was not presented to the district court. Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir. 1998). Raising an argument in the district court is therefore the essential predicate for a valid appeal. FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994). But, we require a party to do more than just raise an argument; the contention must be pressed so that the district court has an opportunity to rule on it. Id.

Benefit's motion for summary judgment makes explicit that the issue is whether Section 514 preempts Directive 175. The question whether Section 502 preempts the Directive is therefore presented for the first time on appeal, so we do not reach the merits of Benefit's claim.

Realizing this hurdle, Benefit seeks to invoke our appellate power through a back door: In its reply brief, it urges that parties do not expect cross-motions for summary judgment to end their case.[2] Regardless of the legal merits of such

---

[2] Benefit relies on 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE (continued...)

an expectation, Benefit has waived our review of the dismissal of the case, because arguments cannot be raised for the first time in a reply brief. Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

## III.

Benefit contends Directive 175 is invalid as a matter of federal law because it is an improperly issued state regulation purporting to supply a rule of decision for ERISA plans. We do not reach the merits of that argument, because Benefit raised it only after entry of judgment.

Benefit made the argument for the first time in its unsuccessful rule 59(e) motion. We review for abuse of discretion. Coliseum Square Ass'n v. Jackson, 465 F.3d 215, 247 (5th Cir. 2006), cert. denied, 128 S. Ct. 40 (2007). In other words, we are not deciding whether Directive 175 is in fact invalid as a matter of federal law, but whether the district court acted improperly.[3]

In denying Benefit's motion, the district court properly relied on Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607 (5th Cir. 2006), in which we said that "[m]otions to alter or amend judgments 'cannot be used raise arguments which could, and should, have been made before judgment issued' and 'cannot be used to argue a case under a new legal theory.'" Id. at 610 (quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)).

Throughout its submissions to the district court, Benefit relied on a theory of ERISA preemption. When the district court found that argument unavailing,

---

[2] (...continued)
§ 2720 (2d ed. 1995).

[3] See Walker v. Bank of Am. Nat'l Trust & Sav. Ass'n, 268 F.2d 16, 25 (9th Cir. 1959) (stating that "an order denying a motion made under Rule 59(e) to alter or amend a judgment is appealable, but only on the question whether there has been a manifest abuse of discretion"), overruled on other grounds, Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); see also 11 WRIGHT & MILLER, supra, § 2818.

Benefit presented the new argument. The district court did not abuse its discretion in refusing to change its judgment in response to Benefit's motion.

## IV.

Benefit contends that ERISA's conflict preemption section, 29 U.S.C. § 1144(a) ("Section 514"), preempts Directive 175. Section 514 "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 1144(a). The preemption is not complete, however, because ERISA saves "any law of any State which regulates insurance, banking, or securities." § 1144(b)(2)(A).

The initial question is whether Directive 175 is a "State law" such that it falls within the preemptive scope of Section 514(a). ERISA defines a "State law" as "all laws, decisions, rule, regulations, or other State action having the effect of law, of any State." § 1144(c).

It is somewhat difficult to categorize Directive 175. In Louisiana, a directive is a "written communication or order issued by or on behalf of the commissioner of insurance to a person whose activities are regulated by this Title, which instructs the person to act in conformance with this Title, or any rule or regulation adopted in accordance with the Administrative Procedure Act." LA. REV. STAT. ANN. § 22:5(6) (2004). In other words, to the extent that directives have the "effect of law," it is because they merely expound on what is already in the insurance code. At the same time, there are punitive consequences for violating a directive.[4] There is no need for us to engage in a metaphysical inquiry into the nature of "law" or its effects where the hand of the state firmly, though not harshly, requires compliance.

---

[4] See, e.g., LA. REV. STAT. ANN. § 22:1316(A) (2004) ("Any person subject to the regulatory authority of this department who fails to comply with any directive issued by the commissioner in connection with a consumer complaint shall be fined an amount not to exceed two hundred fifty dollars for each occurrence.").

There can be no doubt that if Directive 175 is a "State law," it falls within the preemptive scope of Section 514. The other requirement for preemption is that the state law must "relate to" insurance. Not only has the Supreme Court read this prong expansively, see, e.g. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), but it is intuitively correct that regulating insurance contracts means regulating insurance.

Our inquiry does not end with the preemption prong; we must determine whether the state law is saved because it regulates insurance. To decide whether a state law regulates insurance, it must (1) be specifically directed toward entities engaged in insurance and (2) substantially affect the risk pooling arrangements of insurer and insured. Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42 (2003).

Benefit's first argument is that although Directive 175 is a "State law" as used in Section 514(a), it is not a "law of any State" as used in Section 514(b). The argument encompasses the not-absurd proposition that the savings clause must be narrower than the preemption clause. It is undeniable that Congress employed different verbal formulations in the respective two sections. Whatever its intuitive merits, however, the argument fails.

We conclude that any "State law" as defined in the preemption provision qualifies as the "law of any state" for the purposes of the savings clause. The savings clause was phrased with "similar breadth" as the preemption clause. UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 363 (1999). The Court observed this in the process of holding that a judicially created "notice-prejudice" rule regulated insurance and therefore was saved from preemption. Id. at 367-72. If a judicial rule can be a state law, it is far from certain where we would draw the dividing line between "State laws" and "laws of any State."[5] Given the

---

[5] Even outside the ERISA context, this is correct in light of the discrediting of the dis-
(continued...)

6

similar breadth of the clauses, if statutes and state supreme court decisions are "State laws," it follows that rules, regulations, and anything else having the effect of law are as well.

Nor is there a problem with the exception's swallowing the rule. State laws need only "relate to" insurance to fall within ERISA preemptive scope;[6] only those laws that regulate insurance are saved. We therefore decline to extend the test set out in Miller by effectively adding a new requirementSSdistinguishing "State laws" from "laws of any State."

Pursuant to Miller, id. at 341-42, our inquiry is whether Directive 175 is specifically directed toward entities engaged in insurance and substantially affects the risk pooling arrangements of insurer and insured. There can be no question that Directive 175 is specifically directed toward entities engaged in insurance, because it specifically requires insurance companies to include certain terms in their contracts.[7]

The only substantial question is whether the Directive substantially affects the risk pooling arrangement of insurer and insureds. Benefit argues that the "risk pooling" at issue is different from that identified in Miller, in which the Court determined that an "any willing provider" requirement, which prevented

---

[5] (...continued)
tinction between state statutes and judicial decisions as expressed in Swift v. Tyson, 41 U.S. 1 (1842).

[6] Benefit cites numerous cases for the proposition that the savings clause must be read more narrowly that the preemption clause. That is obviously correct. Benefit does not appreciate, however, that the narrowing occurs because the savings clause speaks to only a narrow class of laws, namely those that "regulate insurance" and not merely "relate to" it. See e.g., Suggs v. Pan Am. Life Ins. Co., 847 F. Supp. 1324, 1347 (S.D. Miss. 1994).

[7] See Rush Prudential v. Moran, 536 U.S. 355, 365-66 (2002) (determining whether a law that "regulates insurance" requires that "we start with a 'common-sense view of the matter,' . . . under which 'a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry'") (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50 (1999)).

discrimination against any provider willing to meet the terms and conditions in the ERISA plan, was not preempted. Id. at 338.

In Miller, id. at 339, the Court read the second prong to apply whenever a law "alters the scope of permissible bargains between insurers and insureds." Directive 175 certainly alters the permissible bargains between insurers and insureds by telling them what bargains are acceptable.[8] Accordingly, the Directive affects "risk pooling" and is therefore saved from Section 514 preemption.

AFFIRMED.

---

[8] Our caselaw supports such an understanding. In Ellis v. Liberty Life Assur. Co., 394 F.3d 262, 277 (5th Cir. 2004), we held that two Texas statutes that provided causes of action for insureds when insurers acted in bad faith were preempted by ERISA. Because the two statutes were remedial, they could not "possibly affect the bargain that an insurer makes with its insured ab initio." Id. The statutes therefore applied regardless of the bargain struck.

Directive 175 is different. It sets out, ab initio, what terms are acceptable in insurance contracts. This is the precise distinction we drew in Ellis.