**LITTLE TCHEFUNCTE RIVER ASSOCIATION, et al.**

v.

**ARTESIAN UTILITY COMPANY, INC.**

**CIVIL ACTION NO. 12–1923**

United States District Court, E.D. Louisiana.

Signed December 11, 2015

Elizabeth Livingston De Calderon, Adam Babich, Tulane Environmental Law Clinic, New Orleans, LA, for Little Tchefuncte River Association, et al.

Frank S. Craig, III, John Baird King, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, LA, John M. Mamoulides, John M. Mamoulides, Attorney at Law, Metairie, LA, for Artesian Utility Company, Inc.

## SECTION: "G"(2)

### *ORDER*

NANNETTE JOLIVETTE BROWN, UNITED STATES DISTRICT JUDGE

In this litigation, Little Tchefuncte River Association and Gulf Restoration Network (collectively "Plaintiffs"), brought suit against Artesian Utility Company, Inc. ("Artesian"), alleging that Artesian was in violation of the Clean Water Act by discharging sewage from its wastewater treatment facility into the Little Tchefuncte River.[1] The parties entered into a Consent Judgment, approved by the Court on October 18, 2013, under which Artesian was ordered, *inter alia*, to comply with its Clean Water Act permit.[2] Pending before the Court is Plaintiffs' "Motion for Civil Contempt and Enforcement of the Clean Water Act."[3] Having reviewed the motion, the memoranda in support and in opposition, the parties' evidence, and the applicable law, the Court will deny the motion.

### I. Background

#### A. Factual Background

Artesian operates a wastewater treatment facility near Lake Ramsey in Covington, Louisiana.[4] Artesian has a permit issued by the Louisiana Department of Environmental Quality (LDEQ) to discharge from its treatment facility.[5] The treatment process for wastewater at Artesian's facility is as follows:

1. Rec. Doc. 1.

2. Rec. Doc. 58.

3. *Id.*

4. Rec. Doc. 1 at p. 1.

5. Rec. Doc. 60.

Wastewater from the sub-division is first received in two large lagoons. In the first [lagoon], materials in the wastewater are allowed to settle and aeration takes place. Aeration consists of pumping the water up into the air so that the water is oxygenated, which assists in reducing fecal coliform. In the second [lagoon], aeration also occurs and portions of the second lagoon are covered by a huge tarp, which serves to reduce the formation of algae which, in turn, can lead to suspended solids in the discharge. From the second lagoon, water proceeds into and through three "ditches" or elongated lagoons. In the first, aeration again occurs. In the next two, floating aquatic plants grow, which serve to filter out suspended solids and shade the water to reduce the formation of algae. After the last lagoon, the water proceeds through other equipment, including a flow monitor, a chlorine contact chamber, and a de-chlorinator. The flow monitor records the volume of water, which his [sic] used to compute the mass limits. The chlorine contact chamber contains chlorine tablets which kill and thus reduce fecal coliform. The de-chlorinator serves to reduce or remove any residual chlorine in the discharge. [6]

On October 18, 2013, the Court adopted a Consent Judgment agreed upon by Artesian and the Plaintiffs. [7] Pursuant to the Consent Judgment, Artesian agreed, *inter alia*, that it would "comply with all terms and limitations of its Clean Water Act § 402 permit, Permit No. LA0105520 (the 'Permit')." [8] The permit includes discharge limits and requires Artesian to monitor flow and sample twice per month for Carbonaceous Biological Oxygen Demand (CBOD), Total Suspended Solids (TSS), Ammonia–Nitrogen, fecal coliform, pH, and Total Residual Chlorine (TRC). [9] The permit sets a daily maximum, monthly average, and mass limits for the pollutants to be discharged. [10]

Plaintiffs allege that in October 2013, Artesian exceeded both the daily and monthly limits for fecal coliform. [11] They allege that in November and December 2013, there were daily exceedances of total residual chlorine. [12] In addition, Plaintiffs assert that in May 2014, the daily and monthly limits for fecal coliform, total suspended solids, CBOD were exceeded and the ammonia-nitrogen monthly average was exceeded. [13] Plaintiffs contend that in July and August 2014, both the daily and monthly average limits for fecal coliform were exceeded. [14] Plaintiffs filed the instant motion requesting coercive penalties, compensatory penalties, and injunctive relief on December 16, 2014. [15]

### B. Procedural Background

Plaintiffs filed a complaint against Artesian on July 24, 2012, pursuant to the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a), which provides that "any citizen may commence a civil action on his own behalf" "against any person ... who is alleged to be in violation of [ ] an effluent standard or limitation under this

---

6. Rec. Doc. 60–14 at p. 1.

7. Rec. Doc. 56.

8. *Id.* at p. 2.

9. Rec. Doc. 60 at p. 1.

10. *Id.*

11. Rec. Doc. 58–1 at p. 7.

12. *Id.* at pp. 7–8.

13. *Id.* at p. 8.

14. *Id.*; Rec. Doc. 79 at p. 5.

15. Rec. Doc. 58.

chapter...."[16] Plaintiffs alleged in their complaint that Artesian was "violating the Clean Water Act by discharging sewage from its wastewater treatment facility at the Lake Ramsey subdivision in Covington into a small creek that is a tributary of the Tchefuncte River without a permit."[17] The Court adopted a Consent Judgment agreed upon by the parties on October 18, 2013.[18]

On December 16, 2014, Plaintiffs filed a "Motion for Civil Contempt and Enforcement of the Clean Water Act."[19] Artesian filed an opposition on January 26, 2015.[20] With leave of Court, Plaintiffs filed a reply on January 30, 2015.[21] On February 3, 2015, with leave of Court, Artesian filed a surreply.[22] The Court also granted Artesian's "Motion to Substitute Affidavit for Verification,"[23] wherein Artesian requested that the notarized verification signed by David Guidry, owner of Artesian, be substituted for an affidavit of David Guidry.[24] Also on February 3, 2015, with leave of Court, Plaintiffs filed a "Statement on Civil Contempt Procedures and Amended Proposed Order."[25] The Court held an evidentiary hearing on February 4, 2015.[26] At the evidentiary hearing, the Court heard testimony from David Guidry, the owner of Artesian Utility Company,[27] Matthew Allen, President of the Little Tchefuncte River Association, and Roberta De-vaux Allen, who lives along the Little Tchefuncte River.[28] The Court ordered the parties to file findings of fact and conclusions of law along with post-hearing briefing by February 11, 2015.[29] Both Plaintiffs and Artesian filed their post-hearing memoranda on February 11, 2015.[30] On February 18, 2015, the Court granted Plaintiffs' "Motion for Consideration of Correction of Error in Post–Hearing Brief,"[31] in which Plaintiffs requested that the Court consider a correction of a quotation Plaintiffs had included in their post-hearing brief.

## II. Parties' Arguments

### A. Plaintiffs' Arguments in Support of Their Motion for Civil Contempt

Plaintiffs move this Court, pursuant to Federal Rule of Civil Procedure 70, to find Artesian in civil contempt for an alleged failure to comply with the terms of the Consent Judgment entered and adopted by Order of this Court on October 18, 2013.[32] Plaintiffs request that the Court order Artesian to: (1) pay to the U.S. Treasury coercive penalties of $37,500 each month for each violation of the effluent limitations in Artesian's Clean Water Act § 402 wastewater discharge permit, each violation of its permit's requirement to take a minimum number of samples or

---

16. Rec. Doc. 1 at p. 1.

17. *Id.*

18. Rec. Doc. 56.

19. Rec. Doc. 58.

20. Rec. Doc. 60.

21. Rec. Doc. 65.

22. Rec. Doc. 71.

23. Rec. Doc. 68.

24. Rec. Doc. 74.

25. Rec. Doc. 73.

26. Rec. Doc. 75.

27. Rec. Doc. 60–14.

28. Rec. Doc. 76.

29. Rec. Doc. 75.

30. Rec. Doc. 77; Rec. Doc. 78; Rec. Doc. 79.

31. Rec. Doc. 82.

32. Rec. Doc. 58 at p. 1.

monitor flow, and each failure to submit a discharge monitoring report within 21 days of the permit's stated due date, up to a maximum of $100,000 per month, effective beginning the calendar month immediately following the month in which the Court enters this Order; (2) pay $100,000 in compensatory penalties as a mitigation payment to the Lake Pontchartrain Basin Foundation for the limited purpose of expanding the Beneficial Environmental Project under the Consent Judgment within 30 days from the date of this Order; (3) submit its monthly discharge monitoring reports to Plaintiffs within three days of completion of such report for a period of five years from the date of the Court's Order or until such time as Artesian has complied with its permit continuously for two years, whichever is greater; and (4) pay reasonable attorney's fees and costs associated with this motions. [33]

Plaintiffs assert that Artesian has committed more than 200 violations of pollutant effluent limits during six of the eleven months following the entry of the Consent Judgment, which Plaintiffs contend constitutes a flouting of the Court's Order and merits a finding of civil contempt, award of penalties, and injunctive relief. [34] Quoting the Fifth Circuit in *Martin v. Trinity Industries, Inc.*, [35] Plaintiffs aver that a court should hold a party in contempt when the movant shows, by clear and convincing evidence: "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." [36] Plaintiffs contend that Artesian is in contempt of the Court's Consent Judgment, dated October 18, 2013, which required Artesian to "comply with all terms and limitations of its Clean Water Act § 402 permit, Permit No. LA0105520." [37] According to Plaintiffs, Artesian is in contempt of the Court's Consent Judgment because it violated its permit limitations during the months of May, July, and August 2014, in addition to the months of October, November, and December 2013. [38]

33. Rec. Doc. 73–1. Plaintiffs originally requested that this Court: (1) find Artesian in civil contempt of the Consent Judgment and in violation of the Clean Water Act; (2) assess penalties for civil contempt of $325,000, of which $225,000 was to be paid to the United States Treasury within thirty days of the Court's Order and the remaining $100,000 was to be paid within thirty days of this Court's Order as a mitigation payment to the Lake Pontchartrain Basin Foundation; (3) assess a civil penalty of $37,500 to be paid to the United State Treasury for each and every additional month between August 2014 and the date of entry of the Court's Order during which the discharge monitoring report shows a violation the Permit or the Consent Judgment; (4) assess a civil penalty of $37,500 to be paid to the United State Treasury for each and every additional month for three years following the date of entry of this Order during which the discharge monitoring report shows a violation of its Permit or the Consent Judgment; (5) award reasonable attorneys' fees and costs associated with this motion to Plaintiffs; (6) order Artesian to submit its monthly discharge monitoring reports to Plaintiffs within three days of completion of each report for a period of three years or until such time as Artesian has complied with its Permit continuously for two years, whichever is greater; and (7) grant any other relief that this Court deems proper. Rec. Doc. 58. Plaintiffs filed their "Amended Proposed Order" on February 3, 2015. Rec. Doc. 73–1.

34. Rec. Doc. 58–1 at p. 1.

35. 959 F.2d 45, 47 (5th Cir.1992).

36. Rec. Doc. 58–1 at p. 5.

37. *Id.* (citing Rec. Doc. 56).

38. *Id.* (citing Rec. Doc. 58–4 at pp. 5, 7, 9, 11, 13, 15). Plaintiffs have since argued that Artesian has also violated the Consent Judgment through violations of the daily and monthly fecal coliform limits for September 2014 and through a failure to grab a second

### 1. Contempt of this Court's Order

Plaintiffs contend that Artesian's violations of this Court's Consent Judgment merits a finding of contempt, coercive and compensatory penalties and injunctive relief.[39] Plaintiffs maintain that the Consent Judgment is in effect and is binding on Artesian as an order of this Court.[40] Plaintiffs assert that an order requiring compliance with a Clean Water Act permit is sufficiently "specific, certain, and unequivocal" to serve as a basis for contempt[41] and that the Consent Judgment's requirement that Artesian comply with all terms and limitations of the permit is capable of enforcement.[42] Plaintiffs contend that Artesian's own discharge monitoring reports showing violations of permit limitations constitute admissions and demonstrate that Artesian has failed to obey the Court's Consent Judgment.[43] In support, Plaintiffs assert that Artesian has reported violations of its discharge permit in six of the eleven monitoring reports filed since the Consent Judgment was entered.[44]

According to Plaintiffs, Artesian's civil contempt merits coercive and compensatory penalties to "purge the contempt and coerce future compliance."[45] Quoting *United States v. Alcoa, Inc.*,[46] a Fifth Circuit case, Plaintiffs assert that courts "have wide discretion to enforce decrees and to implement remedies for decree violations."[47] Plaintiffs contend that courts have discretion to determine the size of a coercive penalty depending on the character and magnitude of the harm and the probable effectiveness of any penalty in achieving compliance.[48] Although Plaintiffs originally requested coercive penalties in the amount of $225,000, they have amended their proposed order to request that the Court assess coercive penalties payable to the United States Treasury for future violations of the Clean Water Act permit in the amount of $37,500 per month for each violation of an effluent limitation, violation of the permit's requirement to take a minimum number of samples or monitor flow, and failure to submit a discharge monitoring report within 21 days of the permit's stated due date.[49] Plaintiffs stated during the evidentiary hearing that the Supreme Court in *International Union, United Mine Workers of America v. Bagwell*[50] found that coercive penalties must be purgeable and the defendant must have an opportunity to avoid paying these penalties through compliance with the

sample of effluent in November 2014. Rec. Doc. 80 at pp. 7, 9; Rec. Doc. 73–1. However, these alleged violations did not form the basis of Plaintiffs' motion for contempt. Therefore, the Court will consider only .the alleged violations between October 2013 and August 2014.

39. *Id.*

40. *Id.* at pp. 5–6.

41. *Id.* at p. 6 (citing *Martin*, 959 F.2d at 47; *United States v. Ciampitti*, 669 F.Supp. 684, 687 (D.N.J.1987)).

42. *Id.*

43. *Id.* at p. 7 (citing *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F.Supp.2d 663, 680 (E.D.La.2010)).

44. *Id.*

45. *Id.* at p. 9.

46. 533 F.3d 278, 286 (5th Cir.2008).

47. Rec. Doc. 58–1 at p. 10.

48. *Id.* (quoting *United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).

49. Rec. Doc. 73–1.

50. 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

court order.[51] Therefore, Plaintiffs request that the Court's order be framed such that Artesian would be required to pay coercive penalties only in the event that Artesian committed further violations of the terms of the Court's Order.[52]

Furthermore, Plaintiffs request $100,000 in compensatory penalties for the injuries from the contempt payable to the Lake Pontchartrain Basic Foundation "to expand the beneficial environmental project provided for in [the] Consent Judgment [ ], reasonable attorney fees (which Plaintiffs will present in accordance with Fed. R.Civ.P. 54(d)(2)(B)), and any other penalties the Court deems appropriate."[53]

### a. Coercive Penalties

Plaintiffs contend that Artesian's conduct calls for coercive penalties.[54] Plaintiffs assert that in addition to the repeated violations of the pollutant limits of its permit and the consent judgment, Artesian has "demonstrated its indifference to compliance, both as to the Permit and as to the Consent Judgment."[55] For example, Plaintiffs contend that Artesian demonstrated its indifference when it claimed that the cause of some of its violations was that "Winter Killed the Vegetation," but its response was to take no action.[56] Furthermore, Plaintiffs aver that pursuant to the Consent Judgment, Artesian was required to investigate and report on a method to upgrade the aquatic vegetation cover system but that it did not provide a report by the date it was due.[57] Plaintiffs contend that when they did not receive the required report, they requested performance but received only a response that "did not indicate an investigation and did not answer the required question."[58] Despite an assertion by Artesian that it would take action to modify the vegetation treatment system if the aquatics system is not achieving its intended purposes, Plaintiffs contend that when the aquatic vegetation system failed, its only corrective action was self-correction.[59] They did not, however, address the possible recurrence of the aquatic coverage failure or outline steps to ensure that aquatic coverage failure and exceedances would not be a yearly event, according to Plaintiffs.[60]

Finally, Plaintiffs contend that Artesian's indifference is demonstrated by its failure to advise the Court about its violations of the permit and Consent Judgment or its misrepresentations upon the filing of the proposed Consent Judgment.[61] Plaintiffs aver that Artesian represented that it would comply with the substantive provisions of the Consent Judgment during the waiting period before the Consent Judgment went into effect but that discharge monitoring reports from August, September, and October 2013 show that Artesian was violating its permit limitations, which were included in the Consent Judgment, during each month of the waiting period.[62]

### b. Compensatory Penalties

Plaintiffs request that the Court assess, in addition to reasonable attorneys fees,

---

51. Rec. Doc. 76 at p. 23.

52. *Id.* at p. 24.

53. Rec. Doc. 58–1 at pp. 10–11.

54. *Id.* at p. 11.

55. *Id.*

56. *Id.*

57. *Id.*

58. *Id.* at pp. 11–12.

59. *Id.* at p. 12.

60. *Id.*

61. *Id.*

62. *Id.* at pp. 12–13.

$100,000 in compensatory contempt penalties as a result of Artesian's "repeated violations of its Permit and the Consent Judgment, together with its demonstrated indifference to avoiding future violations." [63] Plaintiffs aver that $75,000 of the $100,000 is to mitigate environmental harm and $25,000 is to compensate Plaintiffs for their time and efforts spent due to the contempt and their members' injuries as a result of the contempt. [64] This payment, they assert, should be made to the Lake Pontchartrain Basin Foundation. [65] In support, Plaintiffs cite *United States v. Alcoa, Inc.*, [66] a Western District of Texas case, asserting that in *Alcoa*, the court awarded $50,000 in compensation for the "considerable time and effort" the government had spent responding to the defendant's violations of the consent decree and $100,000 to be paid to the environmental mitigation projects identified in the Consent Decree. [67] Plaintiffs assert that Artesian's violations of the Consent Judgment have caused Plaintiffs to "spend time and effort preparing for this litigation, including reviewing the discharge monitoring reports, hiking to view the site, and conferring with counsel on violations occurring over a year's time." [68] In addition, Plaintiffs contend that Artesian's failure to comply with the terms of the Consent Judgment and the Permit has caused "further environmental injury by loading unlawfully high levels of pollutants into the Little Tchefuncte River" and that compensatory penalties will mitigate this injury as well as the injuries Plaintiffs' members have suffered. [69]

Plaintiffs aver that Artesian's violations of its permit and this Court's order "repeat the injuries that Plaintiff's members suffered from Artesian's pre-litigation Clean Water Act violations—*i.e.*, diminished enjoyment of the river that runs by their home, the Little Tchefuncte River [ ]." [70] According to Plaintiffs, Matthew Allen, a member of both the Gulf Restoration Network and the Little Tchefuncte River Association, enjoys the river less than he did before learning of Artesian's violations in 2007 "because he continues to fear the high fecal coliform levels and that Artesian's discharges will harm his and his family's health." [71] Plaintiffs contend that other members of the Little Tchefuncte River Association fear for their health and safety if they use the river and that the repeated violations by Artesian have diminished the river's beauty due to the sight and smell of pollution. [72] Furthermore, Plaintiffs contend that "the contempt heightens Plaintiffs' earlier injuries by adding disappointment and frustration to their continued sense of concern and fear." [73]

Additionally, Plaintiffs contend that Artesian should pay Plaintiffs' attorneys' fees and costs to compensate Plaintiffs and

63. *Id.* at p. 15.

64. *Id.*

65. *Id.*

66. No. A–03–CA–222–SS, 2007 WL 5272187 (W.D.Tex. Mar. 14, 2007).

67. Rec. Doc. 58–1 at p. 16 (citing *Alcoa*, 2007 WL 5272187 at *10–11).

68. *Id.* (citing Rec. Doc. 58–6 at pp. 1–6).

69. *Id.*

70. *Id.* at p. 17 (citing Rec. Doc. 58–6).

71. *Id.* (citing Rec. Doc. 58–6 at pp. 9–11).

72. *Id.* at pp. 17–18 (citing Rec. Doc. 58–6 at pp. 3, 13–15).

73. *Id.* at p. 18 (citing Rec. Doc. 58–6 at pp. 2–3, 15).

enforce compliance. [74] Citing the Fifth Circuit in *Cook v. Ochsner Foundation Hospital*, [75] Plaintiffs assert that the Court has discretion to award attorneys' fees in a civil contempt proceeding and that the benefits afforded by the Court's order may be diminished by the attorneys' fees "necessarily expended in bringing an action to enforce that order violated by the disobedient parties." [76]

### c. Injunctive Relief

Plaintiffs additionally argue that Artesian's alleged contempt merits injunctive relief to compel future compliance. [77] Plaintiffs assert that courts have inherent power "to fashion remedies to enforce prior judgments." [78] Plaintiffs contend that the Court may order injunctive relief by requiring that Artesian "submit monthly discharge monitoring reports to Plaintiffs ... within three days of completion of each such report for a period of five years from the date of this Order or until such time as Artesian has complied with its Permit continuously for two years, whichever is greater." [79]

### 2. Violation of the Clean Water Act

Plaintiffs also assert that the Court may impose civil penalties and injunctive relief under the Clean Water Act because Artesian's alleged non-compliance with the Consent Judgment is also a violation of the Act. [80] Plaintiffs contend that under the Clean Water Act, the Court may assess civil penalties not to exceed $37,500 per day for each violation. [81] Plaintiffs cite a case from the District of New Jersey, *United States v. Ciampitti*, [82] for the proposition that in Clean Water Act cases, in addition to finding a party in contempt for failure to obey a court order requiring Clean Water Act compliance, a district court may also impose civil penalties for violations of the Act. [83] . Plaintiffs assert that Artesian's Clean Water Act violations and its behavior evidences a "total lack of respect for the requirements of the Clean Water Act" meriting the Court's assessment of civil penalties for Artesian's post–Consent Judgment violations of the Clean Water Act. [84]

### B. Defendant's Arguments In Opposition

Artesian asserts that it is not in contempt of Court as it has, at all times, acted diligently to ensure compliance with the terms of its permit. [85] Artesian contends that it should not be deemed to be in contempt of the Consent Judgment because: (1) the Consent Judgment is not specific enough to support a finding of contempt; (2) it took multiple reasonable steps to comply with the Consent Judgment; (3) a finding of contempt subverts the Consent Judgment; and (4) Artesian was in substantial compliance with the Consent Judgment. [86] In support, Arte-

---

74. *Id.* at p. 19.

75. 559 F.2d 270 (5th Cir.1977).

76. Rec. Doc. 58–1 at p. 19 (quoting *Cook*, 559 F.2d at 272).

77. *Id.*

78. *Id.* (quoting *United States v. Alcoa*, 533 F.3d 278, 288 (5th Cir.2008)).

79. Rec. Doc. 73–1.

80. Rec. Doc. 58–1 at p. 20.

81. *Id.* (citing 33 U.S.C. § 1319).

82. 669 F.Supp. 684, 699 (D.N.J.1987).

83. Rec. Doc. 58–6 at p. 20.

84. *Id.* at p. 21.

85. Rec. Doc. 60 at p. 1.

86. *Id.* at p. 4.

sian asserts that it has fully complied with the provisions of the Consent Judgment requiring it to supply discharge monitoring reports ("DMRs") to Plaintiffs for a year, improve the facility, supply a report to Plaintiffs regarding possible improvements, allow Plaintiffs' representatives unlimited access for facility tours for up to two years, fund a Beneficial Environmental Project for $24,000, and pay the costs of the litigation in the amount of $20,000 and therefore, these provisions are not at issue in this case.[87] Artesian contends that the Louisiana Department of Environmental Quality ("LDEQ") inspected Artesian on December 4, 2014 and found that the effluent exceedances were the only area of concern noted by the LDEQ.[88] It asserts that the LDEQ did not find that Artesian was non-compliant with any of the other permit requirements.[89] Artesian contends that Plaintiffs seek a judgment of contempt only for eighteen exceedances of discharge limitations and that these exceedances stem from only ten sample results of the approximately 132 that have been taken since October 2013.[90]

First, Artesian contends that the Consent Judgment is not specific enough to support a finding of contempt.[91] Quoting the Fifth Circuit in *Hornbeck Offshore Services, L.L.C. v. Salazar*,[92] Artesian asserts that a "party commits contempt when he violates a definite and specific order of the court requiring him to per-form or refrain from performing a particular act or acts with knowledge of the court's order."[93] Artesian avers that the "contempt power should not be used if the underlying order is 'vague or ambiguous'" and should only be used "where a specific aspect of the injunction has been clearly violated."[94] Artesian asserts that proof of contempt must be clear and convincing.[95] Artesian avers that the statement in the Consent Judgment that Artesian must comply with its permit is a very broad and general statement regarding overall compliance and merely restates the same generalized duty of compliance found in and required by the Clean Water Act, the Louisiana Environmental Quality Act, and the Water Quality Regulations.[96] Therefore, it asserts, the generalized statement does not constitute a "definite and specific order," and its duty to comply with the Permit is the same with or without the statement in the Consent Judgment.[97] Furthermore, according to Artesian, the permit consists of twenty-seven pages of requirements but the Consent Judgment statement does not attempt to identify or name the "particular act or acts" within the Permit with which Artesian must comply.[98] Artesian avers that under the Plaintiffs' theory, it is an act of contempt to violate even the most minor requirements in the permit and that counsel for Artesian, in agreeing to the language of

---

87. *Id.* at pp. 2–3.

88. *Id.* at p. 3 (citing Rec. Doc. 60–1; Rec. Doc. 60–2).

89. *Id.*

90. *Id.*

91. *Id.* at p. 4.

92. 713 F.3d 787, 792 (5th Cir.2013).

93. Rec. Doc. 60 at p. 4.

94. *Id.* (quoting *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,* 177 F.3d 380, 383 (5th Cir.1999)).

95. *Id.* (quoting *Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir.1987)).

96. *Id.*

97. *Id.* at p. 5.

98. *Id.*

the Consent Judgment, never envisioned such a result.[99]

Second, Artesian asserts that a defendant may not be held in contempt as long as it took all reasonable steps to comply.[100] Artesian contends that it at all times has maintained the treatment system and responded to specific exceedances as they occurred.[101] Artesian asserts that it consulted with Ronnie Carter of the Lake Pontchartrain Basin Foundation who visited the site, complimented the treatment system and stated that in general, some exceedances are inevitable and to be expected.[102] Furthermore, it avers that it has spent substantial resources to upgrade its treatment system, enhancing the treatment lagoons, adding a floating aquatics filtering system consisting of native species, enhanced the filters/covers over some ponds, added and/or enhanced the aerators, enhanced an existing chlorine contact chamber, and added a de-chlorinator.[103] In addition, according to Artesian, it dedicates substantial time to the operation and maintenance of the treatment system with an employee of a company affiliated with Artesian checking the quality of the flow and the operation of the equipment every day.[104] Artesian asserts that David Guidry also visits the site several times per week to observe operations, contracts with Sewer Treatment Specialists to conduct the sampling required under the permit, and has implemented additional maintenance policies over the last year including emptying and cleaning the chlorine contact chamber more frequently to remove possible build-up of algae or sludge.[105]

Specifically addressing the October 2013 fecal coliform exceedances and two Total Residual Chlorine Exceedances, Artesian contends that it took prompt remedial action.[106] Artesian asserts that it investigated the cause of the high individual sample and found that the sand bed may have had bacteria in it.[107] Artesian contends that it thoroughly cleaned the sand bed and added additional chlorine tablets to reduce the bacteria, which it asserts may have caused the chlorine exceedances.[108] Artesian asserts that there were no exceedances, even minor ones, between January 2014 and April 2014.[109] Turning to the May 2014 exceedance, Artesian contends that some hard freezes during the winter had killed some of the vegetation in its floating aquatics system, and decomposition of the dead plants could have contributed to the exceedence.[110] Artesian contends that individual samples were above the daily maximum for several parameters and that the monthly average was also exceeded.[111] Artesian also asserts that the heavy rains in May created a higher than normal pounds per day of pollutant being discharged.[112] According to Artesian, by the

99. *Id.* at p. 6.

100. *Id.* (quoting *Harris v. City of Philadelphia,* 47 F.3d 1311, 1324 (3d Cir.1995)).

101. *Id.*

102. *Id.*

103. *Id.* at p. 7.

104. *Id.*

105. *Id.*

106. *Id.*

107. *Id.*

108. *Id.*

109. *Id.* at p. 9.

110. *Id.*

111. *Id.* at p. 10.

112. *Id.* Artesian asserts that the rains that contributed to the exceedances occurred in May 2013. The Court assumes that this was a typographical error given that the exceedances discussed occurred in May 2014.

next sampling cycle in June 2014, all the parameters were back in compliance.[113]

Turning to the two other exceedances for fecal coliform that occurred in July and August 2014, Artesian asserts that there was insufficient chlorination to kill the fecal coliform but that chlorine was added and the chlorine contact chambers were cleaned.[114] Artesian notes that the results of an exceedance were received no earlier than July 29, 2014, leaving little time in July to correct the situation before the next sampling cycle and therefore the problem continued into August.[115]

Third, Artesian contends by seeking contempt for these violations, Plaintiffs are circumventing the normal enforcement process for the violations, in addition to subverting the Consent Judgment itself.[116] Artesian asserts that in the Consent Judgment, it is acknowledged that Artesian was working with LDEQ to arrive at a mutually agreeable solution for both the allegations in the complaint in this case as well as allegations by LDEQ in two prior enforcement actions.[117] Artesian avers that each exceedance was reported to LDEQ in accordance with the permit, LDEQ inspected the site in December 2014 and found no areas of concern other than to note the exceedances at issue in this case, and the exceedances at issue in this case are now subject of an LDEQ enforcement process to be handled through a Notice of Deficiency or a formal referral to LDEQ's Enforcement Divisions for issuance of an enforcement action.[118]

Fourth, Artesian asserts that it has substantially complied with the terms of the permit and the Consent Judgment.[119] Citing the Fifth Circuit in *Whitfield v. Pennington*,[120] Artesian asserts that it may show substantial compliance with the Consent Judgment after a violation is demonstrated.[121] Artesian avers that LDEQ's inspection, finding compliance with all of the provision of the permit except for the exceedances that are the subject of this contempt proceeding, demonstrates that Artesian is in substantial compliance.[122] Furthermore, Artesian asserts that it was in compliance 92.4% of the time based on the actual sample results given that in the eleven months between October 2013 and August 2014 there were a total of 132 sample results and only ten results exceeded a daily maximum.[123] Looking to the number of possible exceedances, Artesian contends that it was in compliance 89% of the time because, out of 165 possible exceedances, Plaintiffs noted only eighteen exceedances.[124] Furthermore, Artesian contends that the fact that it has made improvements from before October 2013 to after the Consent Judgment demonstrates that it has not ignored the permit or Consent Judgment but rather that it has made great efforts to comply and that its attempts to comply have been largely successful.[125]

113. *Id.*

114. *Id.*

115. *Id.*

116. *Id.* at p. 11.

117. *Id.*

118. *Id.*

119. *Id.* at p. 12.

120. 832 F.2d 909, 914 (5th Cir.1987).

121. Rec. Doc. 60 at p. 12.

122. *Id.*

123. *Id.* at pp. 12–13.

124. *Id.* at p. 13.

125. *Id.* at pp. 13–14.

Artesian concludes that it is not in contempt and was in substantial compliance with the permit and the Consent Judgment; however, even if the Court believes that technical violations have occurred, Artesian asserts that no relief should be awarded to Plaintiffs.[126] Artesian notes that LDEQ is addressing any potential non-compliance.[127] Artesian also contends that, as in *LeBlanc v. Trans Union*,[128] a case from another section of the Eastern District of Louisiana, Artesian is not a recalcitrant party and therefore coercive penalties are not appropriate.[129] Artesian contends that contrary to Plaintiffs' assertions, it was not indifferent to the issue regarding the freezing of the floating aquatics system.[130] Artesian notes that the fact that there were no exceedances from January to April 2014 demonstrates that the floating aquatics were effective.[131] Furthermore, Artesian contests Plaintiffs' assertion that the submission of the report required by the Consent Judgment shows indifference.[132] According to Artesian, it supplied the report on December 26, 2013 but did not hear anything from Plaintiffs until October 2014 when Plaintiffs decided to file their contempt motion.[133] Artesian also asserts that, in an abundance of caution, they submitted an updated report.[134] In response to Plaintiffs' assertion that Artesian engaged in misrepresentation with the Court, Artesian asserts that it

agreed to comply with the permit and made every effort to do so.[135]

Turning to the compensatory penalties, Artesian asserts that Plaintiffs' claim that they had to spend time reviewing DMRs and hiking to the site is "disingenuous, at best" because Plaintiffs affirmatively requested that the Consent Judgment contain provisions requiring that DMRs be submitted to them directly for their review and that they be allowed unlimited site visits.[136] Artesian asserts that Plaintiffs would have performed these actions regardless of whether there were exceedances.[137] Artesian also notes that Plaintiffs have offered no proof that any discharges since October 2013 have actually impaired the Little Tchefuncte River.[138]

Furthermore, Artesian contends that Plaintiffs are not entitled to attorneys' fees.[139] Artesian asserts that no effort was necessary to force compliance because Artesian worked diligently to comply with the permit and that no proof has been provided that Plaintiffs incurred any attorneys' fees at all because Plaintiffs are not being charged for this representation.[140]

As for injunctive relief, Plaintiffs assert that any such relief would serve no purpose as Artesian continues to work diligently to remain in compliance and to correct any deficiency when problems

126. *Id.* at p. 14.

127. *Id.*

128. Nos. 98–2081, 97–0971, 2007 WL 4414789 (E.D.La. Dec. 13, 2007).

129. Rec. Doc. 60 at p. 14.

130. *Id.* at p. 15.

131. *Id.*

132. *Id.*

133. *Id.*

134. *Id.*

135. *Id.* at pp. 15–16.

136. *Id.* at p. 16.

137. *Id.*

138. *Id.* at p. 17.

139. *Id.* at p. 18.

140. *Id.* at p. 19.

arise.[141] Adding any requirements, such as sending DMRs to Plaintiffs, Artesian asserts, will only serve to distract Artesian from its main obligation to comply with the permit.[142]

### C. Plaintiffs' Arguments In Further Support of Their Motion

In response to Artesian's first argument that Artesian cannot be held in contempt for a violation of the Consent Judgment because the Consent Judgment is not specific enough, Plaintiffs cite to the Supreme Court's decision in *McComb v. Jacksonville Paper Co.*[143] Plaintiffs assert that in *McComb*, the Supreme Court approved a finding of contempt for violation of an order not to violate a statute.[144] Plaintiffs contend that the Supreme Court found that "[d]ecrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown."[145] According to Plaintiffs, Artesian has shown "a proclivity for unlawful conduct over nearly a decade of operating without a permit and discharging pollutants at levels above Clean Water Act limits."[146] Plaintiffs also cite a District Court of New Jersey case, *United States v. Ciampitti*,[147] a Southern District of West Virginia case, *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co.,*

*LLC,*[148] and an Eighth Circuit case, *Union Electric Co. v. Devine,*[149] in support of their assertion that an order to comply with a Clean Water Act permit is specific enough for a court to find a party in contempt.

Plaintiffs also add allegations that Artesian violated its permit in September 2014 and November 2014.[150] In support, Plaintiffs attached a DMR and "Non–Compliance Report Form" from September 2014[151] and a DMR from November 2014.[152]

Plaintiffs assert that Artesian's verification of its complaint is inadmissible evidence and therefore may not be used in support of any "reasonable steps."[153] Plaintiffs cite to the Declaration of Ronald Carter,[154] who they assert is an expert in the field of sewage treatment systems, who stated that "[a] properly engineered and maintained wastewater treatment system can and should consistently comply with the effluent limitations [in Artesian's permit]."[155] Furthermore, according to Plaintiffs, good faith is not a defense to a civil contempt order.[156] Plaintiffs, quoting the Supreme Court in *McComb*, also contend that if there were extenuating circumstances or if the decree was too bur-

---

141. *Id.*

142. *Id.*

143. Rec. Doc. 65 at p. 1 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949)).

144. *Id.*

145. *Id.* (quoting *McComb*, 336 U.S. at 192, 69 S.Ct. 497).

146. *Id.*

147. 669 F.Supp. 684, 687 (D.N.J.1987).

148. 744 F.Supp.2d 561, 565 (S.D.W.Va.2010).

149. 334 Fed.Appx. 37 (8th Cir.2009).

150. Rec. Doc. 65 at p. 4.

151. Rec. Doc. 65–2.

152. Rec. Doc. 65–3.

153. Rec. Doc. 65 at p. 2.

154. Rec. Doc. 65–1.

155. Rec. Doc. 65 at p. 2.

156. *Id.* (citing *S.E.C. v. Stanford Int'l Bank, Ltd.*, 551 Fed.Appx. 766, 772 n. 3 (5th Cir. 2014)).

densome in operation, Artesian "could have petitioned the District Court for a modification, clarification or construction of the order." [157] Plaintiffs assert that Artesian did not even inform the Court of its violations. [158]

Furthermore, Plaintiffs contend that Artesian has also failed to meet its burden on its defenses of "reasonable steps" and "substantial compliance." [159] Plaintiffs contend that Artesian's assertions that it substantially complied with the Consent Judgment are without merit because it has violated permit limitations for more than half of the months reported since the entry of the Consent Judgment. [160] Plaintiffs also assert that Artesian cannot be found to have substantially complied because its violations breached a substantive requirement of the Consent Judgment. [161] As for Artesian's defense that it took "reasonable steps," Plaintiffs contend that Artesian committed 318 permit violations during six of the eleven months following the entry of the Consent Judgment. [162] Plaintiffs challenge Artesian's assertion that Ronnie Carter ("Carter") is of the opinion that some exceedances are inevitable and point to Carter's Declaration, where Carter states that "[a] properly engineered and maintained wastewater treatment system can and should consistently comply with the effluent limitations [in Artesian's permit]." [163] Plaintiffs also contend that Artesian's defense that it took "reasonable steps" fails because Artesian has not shown that compliance was impossible. [164]

Plaintiffs contend that coercive and compensatory penalties are necessary and appropriate "because Artesian's consistent permit violations go to the substance of the Consent Judgment and deprive Plaintiffs of their right to Artesian's compliance." [165] They also assert that Artesian "does not contest the fear, frustration, loss of enjoyment, and other injuries of Plaintiffs and their members that Plaintiffs have shown" or that "attorney fees are appropriate compensatory relief for contempt." [166] In response to Artesian's contention that Artesian has no proof of attorney's fees, Artesian asserts that it has stated that it will present proof by separate motion for attorneys fees in accordance with Federal Rule of Civil Procedure 54(d)(2)(B). [167]

### D. Artesian's Arguments in Further Opposition to the Motion

In response to Plaintiffs' assertion that a court may find a party in contempt of an order not to violate a statute, Artesian asserts that in *McComb v. Jacksonville Paper Company*, a case from the Supreme Court, the decree at issue enjoined the parties from violating the Act in several particulars. [168] Artesian contends that the Supreme Court characterized the decree at issue as one that "laid on them a duty to

---

157. *Id.* (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949)).

158. *Id.*

159. *Id.* at p. 5.

160. *Id.* at p. 3.

161. *Id.* at p. 7.

162. *Id.*

163. *Id.* (citing Rec. Doc. 65–1).

164. *Id.* (citing *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir.1995)).

165. *Id.* at p. 8.

166. *Id.* at p. 10.

167. *Id.*

168. Rec. Doc. 66–3 at p. 1 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949)).

obey specified provisions of the statute." [169] Artesian avers that in *United States v. Ciampitti*, a District of New Jersey case, also cited by Plaintiffs in support of their assertion that the Consent Judgment was not too vague or ambiguous for Artesian to be found in contempt, the consent decree at issue specifically required certain actions. [170] Artesian contends that in *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co.*, a Southern District of West Virginia case also cited by Plaintiffs, the consent decree specifically ordered that the company "comply with its effluent limitations for selenium on Outfalls 001, 002, and 003 of the permit no later than April 5, 2010." [171] Artesian also addresses Plaintiffs' citation of *Union Electric Co. v. Devine*, an Eighth Circuit Court of Appeals case, stating that the case does not relate to a Clean Water Act permit. [172]

Artesian asserts that in each case, the order or decree was specific as to a particular act or acts. [173] Artesian contends that in no case cited by Plaintiffs was the party generally ordered to comply with a statute or a permit. [174]

### E. Plaintiffs' Oral Arguments In Support of Their Motion

At the evidentiary hearing, Plaintiffs noted that they have modified their request for penalties to comport with the Supreme Court decision in *International Union, United Mine Workers of America v. Bagwell*. [175] Plaintiffs stated that the Supreme Court in *Bagwell* found that coercive penalties must be purgeable and the defendant must have an opportunity to avoid paying these penalties through compliance with the court order. [176] Therefore, Plaintiffs request that the Court's order be framed such that Artesian would be required to pay coercive penalties only in the event that Artesian violated the terms of the Court's Order. [177]

At the evidentiary hearing, Plaintiffs called as witnesses Matthew Allen, President of the Little Tchefuncte River Association, who previously lived adjacent to the Little Tchefuncte River [178] and Roberta Devaux Allen, who lives along the Little Tchefuncte River outside of Covington. [179]

### F. Artesian's Oral Arguments In Opposition to the Motion

At the evidentiary hearing, Artesian asserted that compensatory damages cannot be awarded to a non-party, in this case the Lake Pontchartrain Basin Foundation, because compensatory damages are, by nature, designed to compensate a party for actual loss. [180] In addition, Artesian contends that there has been no actual loss to the Little Tchefuncte River, nor can Plaintiffs show that any alleged harm that oc-

---

**169.** *Id.* (citing *McComb*, 336 U.S. at 191, 69 S.Ct. 497).

**170.** *Id.* at p. 2 (citing *United States v. Ciampitti*, 669 F.Supp. 684, 687 (D.N.J.1987)).

**171.** *Id.* (citing *Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co.*, 744 F.Supp.2d 561, 565 (S.D.W.Va.2010)).

**172.** *Id.* (citing *Union Electric Co. v. Devine*, 334 Fed.Appx. 37 (8th Cir.2009)).

**173.** *Id.*

**174.** *Id.*

**175.** Rec. Doc. 76 at p. 23 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).

**176.** *Id.*

**177.** *Id.* at p. 24.

**178.** *Id.* at pp. 33–34.

**179.** *Id.* at p. 52.

**180.** *Id.* at p. 31.

curred in the eleven-month period caused any problems to the river.[181] Artesian also asserted that in order to prove a case of contempt, Plaintiffs are required to show that Artesian is a recalcitrant party.[182]

After Plaintiffs presented their case, Artesian also moved to dismiss, asserting that Plaintiffs had failed to show, by clear and convincing evidence, that Artesian is a recalcitrant party.[183] The Court took the motion under advisement.[184]

Artesian called as a witness David Guidry, the permitee for Artesian Utility Services.[185]

### G. Plaintiffs' Arguments in Their Post–Hearing Brief

Plaintiffs contend that Artesian's failure to take sufficient measures to achieve compliance is demonstrated through the continuous violations.[186] Plaintiffs assert that Artesian promised that it had "made upgrades to its facility so that it can and will consistently meet applicable Clean Water Act § 402 permit effluent limitations."[187] According to Plaintiffs, Artesian has offered no evidence that compliance is or was impossible or impractical and Artesian could have petitioned the Court for a modification, clarification or construction of the Order.[188] Plaintiffs request that the Court enforce its October 18, 2013 Consent Judgment by imposing coercive fines "to break Artesian's decade-long cycle of Clean Water Act violations and end the Defendant's 481–day history of violating this Court's Order."[189]

Plaintiffs contend that the three elements of a civil contempt order have been met: (1) a court order was in effect; (2) it required certain conduct; and (3) the respondent failed to comply.[190] According to Plaintiffs, no expert testimony regarding harm to the river is required.[191] Plaintiffs assert that a requirement of expert testimony would be out of step with principles of environmental law, which require strict compliance with permit limitations.[192] Furthermore, they assert that Plaintiffs' members testified about the harm they suffer as a result of Artesian's alleged ongoing violations.[193]

Plaintiffs contend that Artesian has offered no legal authority to support its proposition that a Court order to comply with a permit is too vague or broad to enforce with coercive civil penalties.[194] Plaintiffs aver that the Order calls for enforcement only of the permit which is not broader than the requirement to comply at issue in *McComb*.[195]

181. *Id.*

182. *Id.* at p. 70.

183. *Id.* at p. 57.

184. *Id.* at p. 73.

185. *Id.* at pp. 74–75.

186. Rec. Doc. 80 at p. 1.

187. *Id.* at p. 2 (citing Rec. Doc. 58–2).

188. *Id.* (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949)).

189. *Id.* (footnote omitted).

190. *Id.* at p. 3 (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992)).

191. *Id.*

192. *Id.* (citing *Nat'l Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 723–25 (D.C.Cir.1974); *La. Envtl. Action Network v. LWC Mgmt. Co.*, No 07–0595, 2007 WL 2491360, at *6 (W.D.La. Aug. 14, 2007)).

193. *Id.* at p. 4.

194. *Id.* at p. 5.

195. *Id.* (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191–92, 69 S.Ct. 497, 93 L.Ed. 599 (1949)).

Plaintiffs also assert that Artesian had a duty to strictly comply with its permit and that Artesian's violations are extensive and significant.[196] Plaintiffs contend that fecal coliform was discharged in September 2014 at 55 times the permit daily maximum limitation and the monthly average was more than 12 times the permit limit.[197] In October 2013, Plaintiffs assert there was a daily maximum of fecal coliform at 35 times the permit limit and the monthly average was more than 11 times the permit limit.[198] According to Plaintiffs, in July 2014, the daily maximum was eight times the permit limit with the monthly average more than twice the permit limit while in August 2014 the daily maximum was 3.5 times the permit limit and monthly average was 6.75 times the permit limit.[199] Plaintiffs aver that Artesian's assertion that there were only 18 exceedances out of a possible 165 is incorrect because a violation of the monthly limit constitutes a violation for every day of that month.[200] Furthermore, Plaintiffs contend that these are not trivial violations and they moved for contempt after receiving high monthly average fecal coliform readings.[201] Plaintiffs aver that the November 2014 report "shows that Artesian failed to take the second required grab sample of effluent and so failed to report monthly average loading levels or reliable monthly average concentrations."[202]

Plaintiffs additionally assert that the "continuing history of Artesian's decade-long violations of the Clean Water Act amply demonstrates LDEQ's failure to effectively enforce the Act at Artesian's facility."[203]

In response to Artesian's argument that compensatory penalties cannot be awarded in the nature of an environmental mitigation project, Plaintiffs assert that courts "have wide discretion to enforce decrees and to implement remedies for decree violations."[204] Plaintiffs contend that the Fifth Circuit in *United States v. Alcoa* affirmed a district court decision that included the same kind of compensatory penalty that Plaintiffs seek in this case.[205]

## H. Artesian's Arguments in Their Post–Hearing Brief

Artesian asserts that the facts of this case do not support a finding of contempt.[206] Artesian reiterates its argument that the Consent Judgment does not constitute a definite and specific order and therefore Artesian cannot be held in contempt for any alleged violations.[207]

Next, Artesian contends that the Fifth Circuit, in *Waste Management of Washington, Inc. v. Kattler*,[208] found that a defendant may prove its defense after the movant has established a prima facie case for contempt.[209] According to Artesian, once a violation is demonstrated, it is Arte-

196. *Id.* at pp. 6–7.

197. *Id.* at p. 7.

198. *Id.*

199. *Id.*

200. *Id.* (citing *EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1407 (8th Cir.1990)).

201. *Id.* at p. 8.

202. *Id.* at p. 9.

203. *Id.* at p. 10.

204. *Id.* (quoting *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir.2008)).

205. *Id.* (citing *Alcoa, Inc.*, 533 F.3d at 278–88).

206. Rec. Doc. 77 at p. 2.

207. *Id.*

208. 776 F.3d 336 (5th Cir.2015).

209. *Id.* at 341.

sian's burden to "show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order."[210] Artesian asserts that even when a party's activities and violations are shown to have "bordered on recklessness," a party can show that it is not a recalcitrant party by working to remedy the issue.[211] Artesian contends that "the uncontroverted and unchallenged facts presented at the hearing establish that Artesian was in substantial compliance, it worked to remedy the issues that arose, and is not, and never has been, a recalcitrant party."[212]

Artesian re-asserts that the LDEQ has found that the only areas of concern throughout 2013 and 2014 are the exceedances at issue in this proceeding and that it is in substantial compliance with the Consent Judgment because there are only a minimal number of exceedances.[213] Artesian contends that Plaintiffs have not put on any evidence that Artesian could have or should have done anything differently.[214] Artesian points to its upgrades to its facility including re-routing the sewer system, installing baffling in the two lagoons, building three elongated ditches or lagoons, and adding new chlorination, de-chlorination, sand bed, and new piping and electrical.[215] Artesian asserts that it conducts monitoring visits to the facility, its staff conducts general maintenance on an almost daily basis, and Sewer Treatment Specialists conducts monthly sampling, maintains the chlorinator and de-chlorinator, and monitors the operations.[216] Artesian additionally asserts that it is researching methods including a filter and/or baffle system to address the issue regarding the decomposing floating aquatics.[217] Artesian also re-asserts the corrective actions it took when problems or issues arose.[218] Regarding the July 2014 fecal coliform issue, Artesian asserts that the problem was caused by a turtle that had gotten into the chlorine contact chamber.[219] Artesian contends that is has since added a screen over the chlorine contact chamber and a smaller mesh at the inlet pipe to ensure turtles cannot enter the chamber.[220]

Artesian contends that even if the Court finds it in contempt, no penalties or fees should be awarded because Plaintiffs have not proven their entitlement to them.[221] Citing the Fifth Circuit in *Test Masters Educational Services, Inc. v. Singh*,[222] Artesian asserts that the Court has broad discretion in assessing sanctions.[223] Artesian contends that Plaintiffs have not produced any evidence as to any time, effort, expenses, or costs Plaintiffs may have incurred, nor did Matthew Allen or Roberta

---

**210.** Rec. Doc. 77 at pp. 4–5 (quoting *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir.1987)).

**211.** *Id.* at p. 5 (citing *LeBlanc v. Trans Union, LLC*, 2007 WL 4414789, at *4–5 (E.D.La. 2007) (Berrigan, J.).

**212.** *Id.*

**213.** *Id.* at p. 6.

**214.** *Id.* at p. 7.

**215.** *Id.* (citing Rec. Doc. 76 at p. 83).

**216.** *Id.* at p. 8.

**217.** *Id.* at p. 9.

**218.** *Id.*

**219.** *Id.* at p. 10 (citing Rec. Doc. 76 at p. 105).

**220.** *Id.* (citing Rec. Doc. 76 at p. 106).

**221.** *Id.* at p. 11.

**222.** 428 F.3d 559, 582 (5th Cir.2005).

**223.** Rec. Doc. 77 at p. 11.

Allen testify or provide any information regarding a personal incurrence of expenses or damages. [224]

### III.  Law and Analysis

#### A.  Legal Standard on a Motion for Civil Contempt

In *Whitfield v. Pennington*, the Fifth Circuit held that:

> A consent order, while founded on the agreement of the parties, is nevertheless a judicial act, enforceable by sanctions including a citation for contempt. A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order. The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court. [225]

In a civil contempt proceeding, the movant must prove by clear and convincing evidence: "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." [226] Once the movant has shown a prima facie case, the burden falls on the violating party to "show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." [227]

"Courts have ... the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to the court in the enforcement of its decrees." [228] Penalties for civil contempt may be coercive, where the purpose is to make the recalcitrant party comply with the order, or they may be compensatory, where the purpose is to reimburse the injured party for the losses and expenses incurred as a result of the noncompliance. [229]

#### B.  Analysis

Plaintiffs request that the Court find Artesian in civil contempt for failure to comply with paragraph one of the Court's Consent Judgment for discharge of pollutants in excess of the effluent limitations in Artesian's Clean Water Act permit during the months of October 2013, November 2013, December 2013, May 2014, July 2014, August 2014, and September 2014, and for its failure to meet minimum sampling requirements in November 2014. [230] In their motion for contempt, Plaintiffs alleged violations only during the period of October 2013 to August 2014. In their reply brief, they additionally alleged that Artesian had violated fecal coliform limits in September 2014 and that Artesian had failed to take a second required grab sample of effluent in November 2014. [231] "[A]rguments cannot be raised for the first time in a reply brief." [232] Accordingly, the

**224.**  *Id.*

**225.**  832 F.2d 909, 913 (5th Cir.1987) (citations omitted).

**226.**  *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir.1987).

**227.**  *Id.* at 401; *Whitfield*, 832 F.2d at 914.

**228.**  *Cook v. Ochsner Foundation Hosp.*, 559 F.2d 270, 272 (5th Cir.1977).

**229.**  *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976).

**230.**  Rec. Doc. 73–1.

**231.**  Rec. Doc. 65 at p. 4.

**232.**  *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326 (5th Cir.2008).

Court will consider only the alleged violations that occurred between October 2013 and August 2014 as the basis for a finding of contempt.

Plaintiffs request that the Court order Artesian to pay to the United States Treasury coercive penalties of $37,500 per month for: (a) each violation of an effluent limitation in its permit; (b) each violation of its permit requirement to take a minimum number of samples or monitor flow; and (c) each failure to submit a discharge monitoring report within 21 days of the permit's stated due date for the report.[233] Plaintiffs assert that there should be a maximum penalty of $100,000 per month and that the Order should be effective beginning the calendar month immediately following the month in which the Court's Order is entered and should end after Artesian has maintained compliance with the Consent Judgment and the Court's Order for five years after the Order is entered.[234] Plaintiffs also request that Artesian submit its monthly discharge monitoring reports to Plaintiffs within three days of completion of such report for five years from the date of the Order or until Artesian has complied with its permit continuously for two years, whichever is greater.[235] In addition, Plaintiffs request that Artesian pay $100,000 in compensatory penalties as a mitigation payment to the Lake Pontchartrain Basin Foundation to expand the Beneficial Environmental Project.[236] Finally, Plaintiffs request reasonable attorneys' fees and costs associated with its motion.[237]

### 1. Whether a Court Order Was In Effect That Required Certain Conduct by Artesian

It is undisputed that a Court order was in effect at the time the alleged violations occurred. On October 18, 2013, the Court approved the Consent Judgment agreed upon by the parties ordering Artesian, *inter alia*, to comply with all the terms and limitations of its Clean Water Act § 402 permit.[238] Artesian contends, however, that the Consent Judgment is not a "definite and specific order" regarding "a particular act or acts" such that Artesian can be held in contempt for a violation of the Consent Judgment.[239] It asserts that contempt is committed "only if a person violated a court order requiring in specific and definite language that a person do or refrain from doing an act."[240] Artesian asserts that the Consent Judgment stated that Artesian must comply with its permit which "merely restates the very same generalized duty of compliance which is found in and required by the Clean Water Act, the Louisiana Environmental Quality Act (LEQA), and the Water Quality Regulations" and does not invoke a particular act or acts to which Artesian must conform.[241] Plaintiffs, on the other hand, assert that the Consent Judgment is sufficiently specific and contend that in *McComb v. Jacksonville Paper Co.*,[242] the Supreme Court found that "a finding of contempt for vio-

---

**233.** Rec. Doc. 73–1.

**234.** *Id.*

**235.** *Id.*

**236.** *Id.*

**237.** *Id.*

**238.** Rec. Doc. 56.

**239.** Rec. Doc. 60 at p. 4.

**240.** Rec. Doc. 77 at p. 2 (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

**241.** Rec. Doc. 60 at pp. 4–5.

**242.** 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

lating an order not to violate a statute is appropriate—particularly when there is a history of non-compliance and proof of continuing and persistent violations. . . ." [243]

In *McComb,* the district court entered a decree enjoining respondents from violating the Fair Labor Standards Act in the areas of minimum wage, overtime, and record-keeping. [244] Specifically, the court had entered a decree enjoining respondents from:

> (1) [ ] paying the designated class of employees less than 30¢ an hour from the date of the judgment to October 24, 1945, or less than 40¢ an hour thereafter, except as permitted by orders of the Administrator under s 8 or s 14 of the Act; (2) by employing such employees for a workweek longer than 40 hours unless they receive compensation for employment in excess of 40 hours in a workweek at a rate not less than one and one-half times the regular rate at which they are employed; and (3) by failing to keep and preserve records as prescribed by the Administrator, particularly records of the hours worked each workday and each workweek by each of the employees and of the total wages paid to each for each workweek. [245]

Artesian contends that the instant case is distinguishable because in *McComb,* the respondents were required to obey specified provisions of the statute rather than to generally comply with the Act. [246] The Court in *McComb* stated that general decrees, like the decree at issue in *McComb,*

"are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown." [247] The Court noted that the respondent's record of "continuing and persistent violations of the Act" indicated that the decree was "wholly warranted." [248]

Artesian admits that "in most months prior to October, 2013, Artesian had exceedances or other non-compliance issues." [249] The parties proposed, and the Court adopted, the Consent Judgment, in which Artesian was ordered to "comply with all terms and limitations of its Clean Water Act § 402 permit, Permit No. LA0105520." [250] Although the Consent Judgment does not list all of the requirements contained in the permit, Artesian does not appear to contest that the permit itself lacked specific requirements regarding "a particular act or acts."

Plaintiffs also cite a case from the District of New Jersey, *United States v. Ciampitti,* [251] in which Plaintiffs assert that the court found the defendant in contempt for failing to comply with the court's order requiring compliance with the Clean Water Act. [252] In *Ciampitti,* however, the court had issued a permanent injunction enjoining the defendant from discharging fill material into wetlands, ordering defendant to remove all fill material placed in the wetlands in a specific area, and directing the defendant to submit to the Corps of Engineers within 60 days a proposed plan for restoration and planting of the area from

---

243. Rec. Doc. 65 at p. 3.

244. 336 U.S. at 189, 69 S.Ct. 497.

245. *Id.*

246. Rec. Doc. 66–3 at p. 1.

247. *McComb,* 336 U.S. at 192, 69 S.Ct. 497.

248. *Id.*

249. Rec. Doc. 60 at p. 13.

250. Rec. Doc. 56.

251. 669 F.Supp. 684 (D.N.J.1987).

252. Rec. Doc. 654 at p. 4.

which fill was removed.[253] The court found by clear and convincing evidence that the defendant had violated the court's order by failing to complete removal and restoration work at the site within the prescribed time periods and by placing additional fill in the federally regulated wetlands.[254]

In addition, Plaintiffs cite *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co.,*[255] LLC, a case from the Southern District of West Virginia, asserting that the court in that case found the defendants in contempt for failure to comply with a consent decree mandating compliance with a Clean Water permit.[256] However, in *Apogee Coal Co.,* it does not appear that the consent decree was as broad as Plaintiffs contend. The consent decree specifically ordered Apogee Coal Company to comply with its effluent limitations for selenium "on Outfalls 001, 002 and 003 of the permit. . . .[257]

Finally, Plaintiffs cite an Eighth Circuit case, *Union Electric Co. v. Devine,*[258] asserting that, in *Devine,* the court found the defendant in contempt for failure to comply with a consent decree that required him to bring boat docks into compliance with permits.[259] As Artesian correctly notes,[260] however, the permit at issue was not a Clean Water Act permit but a permit issued by Union Electric Company.[261] No further information is provided in the opinion regarding the scope of the requirements of the permit.

■ Although Artesian correctly asserts that the orders at issue in the cases cited by Plaintiffs contain narrower obligations than those at issue in this case, the Court is not persuaded that the Consent Judgment is not specific enough for the Court to find Artesian in contempt. The Consent Judgment was proposed by and entered into by both parties and in it Artesian agreed to comply with "all terms and limitations of its Clean Water Act § 402 permit, Permit No. LA0105520."[262] The Supreme Court has recognized that more general decrees "are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown."[263] Accordingly, the Court finds that the Consent Judgment is a "definite and specific order" regarding "a particular act or acts" such that Artesian may be held in contempt of it.

## 2. Whether Artesian Failed to Comply With the Court Order

Pursuant to the Consent Judgment, Artesian was ordered to "comply with all terms and limitations of its Clean Water Act § 402 permit, Permit No. LA0105520."[264] Artesian does not contest that it has violated its permit.[265] Artesian acknowledges that there were exceedances of both the daily and monthly maximum of fecal coliform in October 2013, that there

**253.** 669 F.Supp. 684, 686 (D.N.J.1987).

**254.** *Id.* at 697.

**255.** 744 F.Supp.2d 561 (S.D.W.Va.2010).

**256.** Rec. Doc. 65 at p. 4.

**257.** 744 F.Supp.2d at 565.

**258.** 334 Fed.Appx. 37 (8th Cir.2009).

**259.** Rec. Doc. 65 at pp. 4–5.

**260.** Rec. Doc. 66–3 at p. 2.

**261.** *Devine,* 334 Fed.Appx. at 37.

**262.** Rec. Doc. 56.

**263.** *McComb,* 336 U.S. at 192, 69 S.Ct. 497.

**264.** Rec. Doc. 56.

**265.** Rec. Doc. 60 at pp. 7–11.

were daily TRC exceedances in both November and December 2013, as well as exceedances of several parameters including fecal coliform, total suspended solids, and CBOD in May 2014.[266] Artesian also admits that in July and August 2014 there were both daily and monthly exceedances of the fecal coliform maximum limits.[267] Plaintiffs have also submitted discharge monitoring reports which show the exceedances, in addition to a "Non–Compliance Report Form" for each exceedance, which outlines the specific violation(s).[268]

■ Rather, at oral argument, Artesian asserted that in order to prove contempt, Plaintiffs had to show that Artesian was a recalcitrant party.[269] The Fifth Circuit has stated that "[t]he civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of court."[270] However, in the very next sentence, the court stated that "[i]ntent is not an issue in civil contempt proceedings; rather, the question is whether the alleged contemnors have complied with the court's order."[271] The Fifth Circuit, in discussing recalcitrance, was discussing the sanction to be imposed and its coercive nature, rather than a requirement that a party be recalcitrant in order to be found in contempt. Therefore, the Court does not find that recalcitrance is an element that a

party must prove in order to demonstrate civil contempt.

■ The Court finds, therefore, that Plaintiffs have shown by clear and convincing evidence "(1) that a court order was in effect; (2) that the order required certain conduct by [Artesian]; and (3) that [Artesian] failed to comply with the court's order."[272] Accordingly, the Court finds that Plaintiffs have established a prima facie case of contempt. The Court will now turn to whether Artesian has "show[n] either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order."[273]

### 3. Mitigating Circumstances and Substantial Compliance

Artesian contends that it should not be deemed to be in contempt of the Consent Judgment because it "took multiple reasonable steps to comply with the Consent Judgment" and "was in substantial compliance with the Consent Judgment."[274] Artesian argues that at all times it maintained the treatment system and responded to specific exceedances as they occurred.[275] Plaintiffs contend that Artesian has failed to offer evidence of any "reasonable steps" taken by Artesian and that the Fifth Circuit authority Artesian cites for its "reasonable steps" defense is about inability to pay as a defense, not about a violation of permit.[276] Furthermore,

266. *Id.* at p. 8.

267. *Id.* at p. 10.

268. Rec. Doc. 58–4 at pp. 5–16.

269. Rec. Doc. 76 at p. 70.

270. *Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir.1987) (internal citations omitted).

271. *Id.*

272. *Petroleos Mexicanos v. Crawford Enters.,* 826 F.2d 392, 401 (5th Cir.1987).

273. *Whitfield v. Pennington,* 832 F.2d 909, 914 (5th Cir.1987).

274. Rec. Doc. 60 at p. 4.

275. *Id.* at p. 6.

276. Rec. Doc. 65 at p. 2. Plaintiffs also objected to the verification submitted by David Guidry in which he asserts that he is the owner and operator of Artesian Utility Company, Inc. on the grounds that the verification does not satisfy the Federal Rules of Evidence. *Id.* With leave of Court, Artesian has since substi-

Plaintiffs assert that good faith is not a defense to a civil contempt order and that Artesian could have petitioned the Court for a modification of the Order if it was too burdensome.[277] Finally, Plaintiffs contend that Artesian has failed to meet its burden to show "substantial compliance."[278]

Artesian does not provide any Fifth Circuit authority to support its contention that taking "reasonable steps" is a defense to civil contempt. Therefore, the Court will look only to whether Artesian has demonstrated mitigating circumstances or substantial compliance with the Consent Judgment.

Artesian contends that LDEQ inspected its facility and stated that as of December 4, 2014, the only area of concern noted was the exceedances at issue in this case.[279] Artesian contends that the inspection, in and of itself, demonstrates substantial compliance given that the Permit contains at least twenty-seven pages of requirements.[280] Furthermore, Artesian asserts that it was in compliance 92.4% of the time based on actual sample results.[281] Artesian contends that of the 132 total samples

taken between October 2013 and August 2014[282] only ten sample results exceeded a daily maximum.[283] Artesian also asserts that based upon the number of possible exceedances, it was in compliance 89% of the time.[284] Artesian avers that there were 165 possible exceedances and Plaintiffs have noted only eighteen.[285]

Plaintiffs disagree that Artesian has substantially complied with its permit.[286] According to Plaintiffs, Artesian's violations breached a substantive requirement of the Consent Judgment, the requirement that Artesian comply with the permit, and therefore it cannot be said to have substantially complied.[287] Furthermore, they assert that Artesian repeatedly violated monthly average requirements and therefore these readings represent violations "each and every day of the applicable month."[288] In support, Plaintiffs cite an Eleventh Circuit case, *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*,[289] in which the court found that violation of a monthly average effluent limitation should be counted as thirty violations.[290] The Court need not decide the

---

tuted an affidavit of David Guidry for the verification. Rec. Doc. 74. David Guidry also testified at the evidentiary hearing. Rec. Doc. 76 at pp. 74–110.

277. Rec. Doc. 65 at p. 2 (citing *SEC v. Stanford Int'l Bank, Ltd.*, 551 Fed.Appx. 766, 772 n. 3 (5th Cir.2014)).

278. *Id.*

279. Rec. Doc. 60 at p. 12 (citing Rec. Doc. 60–2).

280. *Id.*

281. *Id.* at p. 13.

282. Artesian asserts that sampling was performed twice a month for CBOD, TSS, Ammonia–Nitrogen, fecal coliform, pH, and TRC. *Id.* at p. 12.

283. *Id.* at pp. 12–13.

284. *Id.* at p. 13.

285. Artesian explains that in a monthly reporting period, Artesian could exceed a daily maximum and a monthly average for five parameters, a minimum/maximum for pH, and a mass limit for TSS, ammonia, and CBOD. *Id.*

286. Rec. Doc. 65 at p. 8.

287. *Id.* (citing *Whitfield v. Pennington*, 832 F.2d at 914; *LeBlanc v. Trans Union, LLC*, 2007 WL 4414789, at *3 (E.D.La. Dec. 13, 2007) (Berrigan, J.)).

288. Rec. Doc. 80 at p. 8.

289. 897 F.2d 1128, 1140 (11th Cir.1990).

290. Rec. Doc. 80 at p. 8.

issue of whether Artesian was in substantial compliance; however, because it finds that there are mitigating circumstances for the violation of the Consent Judgment.

Artesian has provided evidence that the fecal coliform issue in October 2013 was caused by bacteria in the sand filter.[291] David Guidry, owner of Artesian Utility Company, testified that in order to remedy the issue they cleaned the sand bed, washed tubes and pipes, and added additional chlorine.[292] Those remedial measures, Artesian contends, were what led to the TRC issues in November and December of 2013.[293] Mr. Guidry testified that the individual in charge of adding the de-chlorination tablets was an employee of STS and hadn't added enough de-chlorination to counteract the additional chlorine.[294] It is undisputed that the next exceedance wasn't until May of 2014, when part of Artesian's floating aquatics system began decomposing.[295] Mr. Guidry testified that he is researching adding filters and/or a baffling system to resolve this issue.[296] Mr. Guidry testified that the fecal coliform exceedances in July and August 2014 were caused by a decomposing turtle in the chlorine contact chamber.[297] Mr. Guidry testified that the problem wasn't revealed until July 29, 2014, and therefore the issue continued into August.[298] He also testified that in order to prevent the problem in the future Artesian has added a screen over the chlorine contact chamber and mesh at the inlet pipe to ensure that turtles do not enter the chamber.[299] Furthermore, Mr. Guidry testified that Artesian has changed the procedures regarding the number of times the chlorine contact chamber is cleaned, ensured that chlorine and de-chlorination tablets are present at the site, changed the method of checking to tubes to make sure that they are filled, and insisted that the individual at STS previously responsible for checking the site be relieved of his duties.[300]

■ The Court credits the testimony of David Guidry and finds that causes of the exceedances are mitigating factors in this case. The evidence demonstrates that the original exceedance was caused by bacteria trapped in the sand and the next exceedances were caused by the remedial measures taken after the October 2013 exceedance.[301] There were four months with no exceedances.[302] Then, in May 2014, Artesian presented evidence that the exceedance was caused by the filtering system itself when the floating aquatics system decomposed, in addition to excess rain.[303] Plaintiffs contend that Artesian has demonstrated its indifference to compliance because it reported only "self-correction" as the corrective action for this issue.[304]

291. Rec. Doc. 58–4 at pp. 5–6.

292. Rec. Doc. 76 at p. 100.

293. *Id.*

294. *Id.* at pp. 100–01.

295. *Id.* at p. 102.

296. *Id.* at p. 103.

297. *Id.* at p. 105.

298. *Id.*

299. *Id.* at p. 106.

300. *Id.* at pp. 105–07.

301. Rec. Doc. 58–4 at pp. 5–6; Rec. Doc. 76 at p. 100.

302. Rec. Doc. 76 at p. 101.

303. *Id.* at p. 102.

304. Rec. Doc. 58–1 at p. 11 (citing Rec. Doc. 58–4 at pp. 11–12). Plaintiffs also contend that Artesian has demonstrated its indifference to compliance with the Consent Judg-

However, Mr. Guidry testified that he is researching the possibility of additional filters and/or a baffling system.[305] Finally, Artesian presented evidence that the July and August exceedances were caused by a turtle that had gotten into the chlorine contact chamber and had begun decomposing.[306]

Furthermore, Artesian presented evidence that it has made enormous efforts to comply with the Order and has instituted corrective measures after every exceedance.[307] Mr. Guidry testified that Artesian has re-routed the whole sewer system, installed baffling, built elongated ditches, added new chlorination, and added de-chlorination, a sand bed, and new piping and electrical.[308] The Court finds that Artesian has met its burden of demonstrating that there were mitigating circumstances surrounding its violations of the Consent Judgment. Accordingly, the Court finds that Artesian is not in contempt of the Consent Judgment and therefore declines to impose either coercive or compensatory

penalties or order the injunctive relief requested by Plaintiffs.[309]

#### 4. Enforcement of the Consent Judgment under the Clean Water Act

Plaintiffs also originally requested that the Court impose civil penalties and injunctive relief under the Clean Water Act, in addition to penalties for civil contempt.[310] However, Plaintiffs appear to have abandoned this request. At oral argument, Plaintiffs represented that they were moving to enforce the terms of the Consent Judgment and "not moving under the Clean Water Act" for penalties.[311] Furthermore, in the proposed order Plaintiffs first filed with the Court, Plaintiffs requested that the Court order that Artesian is "in civil contempt of this Court's Consent Judgment and in violation of the Clean Water Act."[312] However, in the "Amended Proposed Order," Plaintiffs proposed only that the Court find Artesian in civil contempt.[313] Therefore, the Court need not address Plaintiff's original request for the Court to impose penalties

ment as it failed to timely submit a report on a method to upgrade the aquatic vegetation cover system, as required in paragraph three of the Consent Judgment, that Artesian failed to bring violations of the Consent Judgment to the attention of the Court, and that Artesian made misrepresentations upon lodging the proposed Consent Judgment. *Id.* However, Plaintiffs do not assert any alleged violations of paragraph three of the Consent Judgment as the basis for their motion for contempt, nor do they cite any requirement in the Consent Judgment that Artesian file notice with the Court of any effluent limitation violations. As for the alleged misrepresentations regarding its commitment to comply with its permit, Artesian contends that it made every effort to do so and was in the process at the time of implementing myriad corrective actions. Rec. Doc. 60 at p. 16. Because the motion for contempt is based solely upon alleged violations of paragraph one of the Consent Judgment, the Court focuses solely upon allegations surrounding those violations in con-

sideration of whether Artesian is in contempt of the Consent Judgment.

305. Rec. Doc. 76 at p. 103.

306. *Id.* at p. 105.

307. *Id.* at pp. 83–84, 105–07.

308. *Id.*

309. In light of the Court's holding that Artesian is not in contempt of the Consent Judgment, the Court need not address Artesian's arguments that a finding of contempt would subvert the Consent Judgment and the normal enforcement process through LDEQ.

310. Rec. Doc. 58–1 at pp. 20–21.

311. Rec. Doc. 76 at p. 20.

312. Rec. Doc. 58–7.

313. Rec. Doc. 73–1.

pursuant to the Clean Water Act because Plaintiffs have abandoned this issue.

### IV. Conclusion

Accordingly;

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Contempt and Enforcement of the Clean Water Act" [314] is **DENIED.**